COMMONWEALTH *vs.* BENJAMIN A. DECHRISTOFORO.

Middlesex.    February 2, 1976. — August 30, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER, &
WILKINS, JJ.

*Practice, Criminal,* New trial, Disclosure of evidence before grand jury,
    Argument by prosecutor, Fair trial, Capital case. *Constitutional
    Law,* Due process of law.

A criminal case was not properly before this court on any issues relat-
    ing to a police officer's grand jury testimony where the defendant
    did not appeal from the trial judge's denial of a motion for a new
    trial based on inconsistency of such testimony with the officer's testi-
    mony at the trial, although the defendant filed a new motion for a
    new trial following a refusal of relief by a Federal court, and ap-
    pealed from the denial of the new motion. [32-34]
The mere showing that a police officer testified before the grand jury
    that a companion of the defendant gave a false name for the mur-
    der victim, and that the officer testified at the defendant's trial that
    the defendant gave the false name did . not entitle him to a new
    trial. [34]
The mere showing that a prosecutor was in possession of the tran-
    scripts of the testimony of a police officer before the grand jury and
    knew of the inconsistency of his testimony there with his testimony
    at the trial of the defendant and did not inform him of it did not
    compel a conclusion that the defendant's constitutional rights were
    violated or that he was entitled to a new trial. [34-36]
In the context of the entire record of the trial of the defendant for mur-
    der at which he was denied access to the grand jury testimony of a
    police officer, there was no error in the denial of a motion for a new
    trial based on the inconsistency of such testimony with the officer's
    testimony at the trial as to whether the defendant or a codefendant
    had given a false name for the victim, an inconsistency also appear-
    ing in the transcript of the probable cause hearing and there "used
    exhaustively" in cross-examination of the officer, where warranted
    findings by the trial judge included findings that "beyond a reason-
    able doubt . . . no possible prejudice could attach to the defendant"
    by virtue of the unavailability of the grand jury minutes, that "jus-
    tice has been done," and that the defendant was "afforded every
    opportunity to achieve a full evaluation of his case." [36-37]
The defendant in a murder case was not denied a fair trial by reason
    of the prosecutor's failure to give him a statement to the grand jury
    of a police officer indicating that he had no personal knowledge of
    whether a derringer "could have been slipped from the front to the
    back" of a car. [37-38]

Commonwealth *v.* DeChristoforo.

This court declined to exercise its power under G. L. c. 278, § 33E, to order a new trial in a capital case notwithstanding the prosecutor's alleged "prejudicial and grossly improper" argument to the jury, "compounded by his suppression" of the grand jury testimony of a police officer. [38-39]

This court declined to exercise its power under G. L. c. 278, § 33E, to order a new trial for a defendant convicted of murder in the first degree whereas codefendants who allegedly "actually fired the shots which killed the victim" were permitted to plead guilty to second degree murder. [39-40]

INDICTMENTS found and returned in the Superior Court on May 10, 1967.

A motion for a new trial, filed on August 26, 1974, was heard by *Robert Sullivan,* J.

*Paul T. Smith* (*Jeffrey M. Smith* with him) for the defendant.

*Bonnie H. MacLeod-Griffin,* Assistant District Attorney, (*Alan L. Kovacs,* Assistant District Attorney, with her) for the Commonwealth.

QUIRICO, J. On April 30, 1969, the defendant was convicted in the Superior Court of murder in the first degree and of illegal possession of firearms. The jury recommended that the death penalty not be imposed and he was sentenced to imprisonment for life on the murder conviction. His convictions were affirmed by this court on December 7, 1971, in *Commonwealth* v. *DeChristoforo,* 360 Mass. 531 (1971). The case is now before us on the defendant's appeal from the denial of his *third* motion for a new trial in which he alleges that he was prejudiced at the trial because he was denied access to the transcript of the testimony of a police officer before the grand jury, and because of improper remarks by the prosecutor in his closing argument to the jury. He argues in his brief that because of the alleged errors, "the trial judge had no discretion to deny the defendant's motion for a new trial," and he concludes by requesting "that in any case, this Court, in the exercise of its powers under G. L. (Ter. Ed.) c. 278, § 33E, 'order a new trial.' "

We hold that there was no error in the trial judge's de-

nial of the defendant's motion for a new trial and that we should not grant any relief under G. L. c. 278, § 33E.

## A. SUMMARY OF PRIOR PROCEEDINGS.

A brief summary of the many prior proceedings relating to this case may help to furnish some background to the present appeal. However, the evidence which was presented at the defendant's trial and which resulted in his convictions in the Superior Court is already summarized in our opinion in *Commonwealth* v. *DeChristoforo, supra* at 532-534, and need not be repeated here.

1. After the defendant was convicted by the jury he filed a motion for a new trial based on a claim of newly discovered evidence and that motion was denied. It is of no further significance in the present appeal. The issues on which the defendant sought review by this court and which were decided in 360 Mass. 531 included the following of present significance: (a) the trial judge's denial of his motions for inspection of the minutes of the testimony of a Medford police officer (Carr) before the indicting grand jury, and (b) the judge's denial of a motion for a mistrial because of certain remarks by the prosecutor to the jury in his closing argument. We upheld the trial judge on all issues raised by the appeal, and affirmed the judgment on each indictment.

2. As to the grand jury minutes we held (at 534-536) that under our case law at that time the defendant was required to show a "particularized need" for the minutes, that he had not made such a showing, and that the motions to inspect the minutes were therefore properly denied. *Commonwealth* v. *Doherty*, 353 Mass. 197, 209-210 (1967), cert. denied, 390 U.S. 982 (1968), overruled on other grounds in *Connor* v. *Commonwealth*, 363 Mass. 572 (1973). *Commonwealth* v. *Ladetto*, 349 Mass. 237, 244-245 (1965). We also noted (at 536 n.2) that since the defendant had failed to have the minutes produced and marked for identification and incorporation in the record on appeal we would not speculate on whether they contained anything which might be helpful to the defendant. We then

added (at 536) that our action did not preclude the defendant from again moving for a new trial "at the hearing on which he may, by proper action, compel the production of Officer Carr's grand jury testimony for determination by the trial judge whether such testimony was in any way inconsistent with his testimony at the trial."[1]

3. As to the alleged improper remarks to the jury by the prosecutor in his closing argument we held (at 536-539) that, although the remarks were improper, "[t]he judge acted properly within his discretion in denying a mistrial and in relying on curative instructions [to the jury] to erase the error."

4. On January 12, 1972, the defendant filed a *second* motion for a new trial, and the motion was denied on May 26, 1972. This motion apparently was made pursuant to the language contained in the last sentence of par. 2 above which was quoted from our opinion of December 7, 1971, in *Commonwealth* v. *DeChristoforo*, 360 Mass. 531, 536 (1971). By this motion the defendant again sought access to the grand jury minutes of Carr's testimony, and the judge, after reading the minutes, stated that he saw no "particularized need" to permit the defendant to examine them, refused to incorporate them in the record, and denied the motion. The defendant made no attempt to obtain appellate review of the denial of this motion.

5. At this point the defendant, instead of seeking appellate review of the denial of his second motion for a new trial, sought relief in the Federal courts. He filed a petition in the United States District Court for the District of Massachusetts for a writ of habeas corpus contending that he had been denied a fair trial in the Superior Court because of the judge's denial (a) of his motions for access

---

[1] While we later changed the law on this subject by our decision in *Commonwealth* v. *Stewart,* 365 Mass. 99, 105-106 (1974), holding that a defendant is no longer required to show a "particularized need" in order to see the grand jury transcript of testimony given by him or by any person called as a witness by the Commonwealth in a matter related to that prior testimony, we expressly stated that the change was to be prospective only. *Commonwealth* v. *Hall,* 369 Mass. 715, 725 (1976), and cases cited therein.

to the grand jury minutes and (b) of his motion for a mistrial based on the prosecutor's improper remarks in final argument to the jury. As to the grand jury minutes the United States District Court judge denied relief on the ground that the defendant had not appealed from the trial judge's denial of his second motion for a new trial (see par. 4 above) and therefore he "had not exhausted available state remedies"; and as to the prosecutor's remarks he denied relief on the ground that the remarks "were not so prejudicial as to deprive the [defendant] of his constitutional right to a fair trial." The petition was denied. *DeChristoforo* v. *Donnelly*, Misc. Civil No. 72-96-G (D. Mass. 1972).

The defendant appealed from the denial to the United States Court of Appeals for the First Circuit which reversed on the sole ground that certain of the prosecutor's remarks in his closing argument were so prejudicial as to constitute a denial of due process. *DeChristoforo* v. *Donnelly*, 473 F.2d 1236 (1st Cir. 1973). The Supreme Court of the United States granted certiorari on the Commonwealth's petition in *Donnelly* v. *DeChristoforo*, 414 U.S. 974 (1973), and then on May 13, 1974, it reversed the judgment of the Court of Appeals by its decision in *Donnelly* v. *DeChristoforo*, 416 U.S. 637 (1974).

Because of the United States District Court judge's holding that the defendant "had not exhausted available state remedies" as to the grand jury minutes, the decisions of the Court of Appeals and of the Supreme Court were based solely on the issue of the prosecutor's remarks in argument.

6. On August 26, 1974, the defendant filed in each case a *third* motion for a new trial, this time stating that it was "for the reason that justice may not have been done."[2] G. L. c. 278, § 29, as amended by St. 1966, c. 301. The motion then states the following principal reasons why the

---

[2] The motion consisted of a single document which bears the numbers of both indictments, and we hereafter refer to such motion in the singular, without distinction as to the two indictments.

defendant thinks that "justice may not have been done": (a) because he was not allowed to see Carr's grand jury testimony, (b) because of the prosecutor's alleged improper remarks in his final argument to the jury, and (c) because the defendant was convicted of murder in the first degree while his two codefendants were permitted to plead guilty to murder in the second degree with resulting differences in parole eligibility (G. L. c. 127, § 133A, as appearing in St. 1965, c. 766, § 1). The motion was heard on October 10 and 17, 1974, and on January 6, 1975, the judge filed a written decision stating his subsidiary and general findings, including a conclusion that "justice has been done," and denying the motion "on all grounds."

7. At the hearing on the defendant's *third* motion for a new trial the transcript of Carr's grand jury testimony was marked as an exhibit and the Commonwealth for the first time furnished a copy of it to the defendant. The significance of this transcript is that it reveals a difference in the testimony which Carr gave before the grand jury from that which he gave at the defendant's trial. Carr was one of the police officers who stopped the automobile in which the defendant was riding with his two codefendants and with the body of the murder victim. At that time and place the defendant Frank Oreto told the officers that his name was "Joseph Rego," and the defendant gave them a name other than his true name. As to the victim one of the defendants said that he was "John Simeone from Boston," who had been in a fight in Revere and whom they were taking to a hospital. The victim was in fact one Joseph F. Lanzi, and he was already dead.

At the defendant's trial Carr testified that the defendant was the person who told the officers that the victim was "John Simeone." The transcript of his testimony before the grand jury showed that he had testified there that it was Oreto who had given the wrong name for the victim. At the time of the trial the defendant had not been permitted to see Carr's grand jury testimony and he was therefore not in a position to cross-examine him on this one difference between Carr's grand jury testimony and

his trial testimony. The defendant contends that he was thus prejudiced in a manner and to an extent which compelled the judge, as matter of law, to grant him a new trial.

In denying the defendant's *third* motion for a new trial the judge made the following finding concerning this point: "It is important to note here that Officer Carr, when he testified at a probable cause hearing committed the same inconsistency; that is to say, he attributed the use of the name 'Johnny Simeone' to Oreto, as he also had done before the grand jury. It is of paramount importance to note here that a transcript of this probable cause hearing testimony was available to the defendant at all times throughout the trial of the cause, and in fact *was used exhaustively in cross-examination of Officer Carr*, and that this particular inconsistency was pressed by counsel for the defendant in cross-examination at the trial. . . . All other testimony of the witness Officer Carr before the grand jury, and at trial, appears to be consistent." He found further that "[a]t the trial, counsel for the defendant DeChristoforo made *full use of this inconsistency* from the transcript of an earlier probable cause hearing in an attempt to impeach Officer Carr's testimony at the trial."

8. The judge made the following general findings based on his detailed subsidiary findings: "This Court finds beyond a reasonable doubt that no possible prejudice could attach to the defendant by virtue of the unavailability of the grand jury minutes prior to trial. . . . In short, this Court finds beyond a reasonable doubt that there was nothing argued or introduced that would warrant the granting of a new trial in this case. . . . I find that . . . justice has been done, and certainly this defendant has been afforded every opportunity to achieve a full evaluation of his case."

B. Consideration of Issues Raised by Defendant.

1. *Grand jury testimony.* We are constrained to hold at the outset that this case is not properly before us on the merits of any issues relating to Carr's grand jury testimony. In our opinion in *Commonwealth* v. *DeChristoforo,*

360 Mass. 531, 536 (1971), we said that "the defendant is not precluded from seeking relief by way of a motion for a new trial at the hearing on which he may, by proper action, compel the production of Officer Carr's grand jury testimony for determination by the trial judge whether such testimony was in any way inconsistent with his testimony at the trial." The defendant took advantage of that opportunity by filing his *second* motion for a new trial seeking that relief. When that motion was decided against him he took no appeal therefrom but instead shifted to the Federal courts where he was denied relief as to the grand jury testimony because he had not exhausted his remedies thereon in the courts of this Commonwealth. This does not mean that it is now open to him to come back to the courts of this Commonwealth and relitigate the very issue which was decided against him on his *second* motion for a new trial and which decision he allowed to stand as final by not exercising his right to appeal therefrom. He has had his day in court on that point, and he is bound by the unappealed decision of the trial judge denying that motion.

The defendant's *third* motion for a new trial and the present appeal from its denial by the trial judge seems to have been intended in part to eliminate the ground on which the United States District Court judge refused to give relief as to the grand jury minutes, that ground being the failure of the defendant to exhaust his State court remedies by appealing from the denial of his *second* motion for a new trial. The fact that the failure to appeal from the denial of the earlier motion may now bar the defendant from obtaining relief by way of a writ of habeas corpus in the Federal courts does not entitle him as of right to an opportunity to relitigate the issue in the courts of this Commonwealth. For the purpose of this opinion we need not, and do not, concern ourselves with the implications of the decision in *Stone* v. *Powell*, 428 U.S. 465 (1976), on the continued availability of resort to the Federal courts for relief by way of petitions for writs of habeas corpus after convictions in State court trials.

Notwithstanding our holding that the defendant's fail-

ure to seek appellate review from the denial of his *second* motion for a new trial precludes him from review of the grand jury minutes issue on this, his *third* such motion, it may be appropriate, in view of the extended litigation in this case, to express our views on the merits of that issue as argued by the defendant.

(a) Admittedly the grand jury transcript shows that Carr's testimony at the trial differed from his testimony before the grand jury with respect to whether it was the defendant or Oreto who gave the officers a false name for the victim. However, the mere showing of that inconsistency does not, without more, entitle the defendant to a new trial. Nothing in our opinion in *Commonwealth* v. *DeChristoforo*, 360 Mass. 531, 536 (1971), to the effect that the defendant was not precluded from seeking access to the grand jury minutes by a motion for a new trial can be taken to require a new trial in the event that the grand jury minutes showed a discrepancy in Carr's testimony.

(b) The defendant argues that apart from any motion which he made to inspect the grand jury minutes and the judge's alleged error in denying the motions, the failure of the prosecutor to inform the defendant of Carr's grand jury testimony, in so far as it differed from his trial testimony, violated the defendant's constitutional right to a fair trial within the holdings of *Brady* v. *Maryland*, 373 U.S. 83 (1963), and *Giles* v. *Maryland*, 386 U.S. 66 (1967). As to this contention, we hold that the mere showing that the prosecutor was in possession of the transcript of Carr's grand jury testimony and that he therefore knew of the inconsistency in Carr's testimony but that he did not inform the defendant of it does not, without more, compel the conclusion that the defendant's constitutional rights were violated or that he is entitled to a new trial. In *Commonwealth* v. *Gilday*, 367 Mass. 474 (1975), the defendant claimed constitutional error in the denial of a motion for a new trial based on the ground that the prosecution had "knowingly suppressed" the testimony of a witness which would have been relevant and exculpatory. In sustaining the denial of the motion, we said (at 487): "To demon-

strate constitutional error three elements must be shown: (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence." *Commonwealth* v. *Stone*, 366 Mass. 506, 511 (1974).

(c) On June 24, 1976, the Supreme Court of the United States announced its most recent decision on this general subject in *United States* v. *Agurs*, 427 U.S. 97 (1976). In that decision the Court gave further definition to its holding in *Brady* v. *Maryland, supra* at 87, that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The Court stated (at 104) that "[a] fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence *might have affected the outcome of the trial*" (emphasis supplied). In defining materiality, the Court said (at 109-113): "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense. Nor do we believe the constitutional obligation is measured by the moral culpability, or the willfulness, of the prosecutor. If evidence highly probative of innocence is in his file, he should be presumed to recognize its significance even if he has actually overlooked it.... Conversely, if evidence actually has no probative significance at all, no purpose would be served by requiring a new trial simply because an inept prosecutor incorrectly believed he was suppressing a fact that would be vital to the defense. If the suppression of evidence results in constitutional error, it is because of the character of the evidence, not the character of the prosecutor.... [S]ince we have rejected the suggestion that the prosecutor has a constitutional duty routinely to deliver his entire file to defense counsel, we cannot consistently treat every nondisclosure as though it were error. It necessarily follows that the judge should not order a new trial

every time he is unable to characterize a nondisclosure as harmless under the customary harmless error standard. Under that standard when error is present in the record, the reviewing judge must set aside the verdict and judgment unless his 'conviction is sure that the error did not influence the jury, or had but very slight effect.' *Kotteakos* v. *United States,* 328 U.S. 750, 764 [1946]. Unless every nondisclosure is regarded as automatic error, the constitutional standard of materiality must impose a higher burden on the defendant. The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. *If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial.* On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt. This statement of the standard of materiality describes the test which courts appear to have applied in actual cases although the standard has been phrased in different language" (emphasis supplied). *Commonwealth* v. *Dabrieo,* 370 Mass. 728, 743 (1976). *Commonwealth* v. *Earl,* 362 Mass. 11 (1972). See *United States* v. *Keogh,* 391 F.2d 138, 146-148 (2d Cir. 1968).

(d) This brings us to the point where we must now apply the tests, standards and rules quoted above from the *Agurs* decision to the situation presented to us in the present case. As stated in that decision (427 U.S. at 112), "the omission [of Carr's grand jury testimony from the information made available to the defendant] must be evaluated in the context of the entire record." It is our opinion that the judge followed that requirement in arriving at his decision to deny the defendant's *third* motion for a new trial. We note that in his decision he made detailed sub-

sidiary findings which were supported by the evidence, and that on the basis thereof he made general findings or conclusions which were supported by the subsidiary findings. In view of all his findings, and particularly his general finding "beyond a reasonable doubt that no possible prejudice could attach to the defendant by virtue of the unavailability of the grand jury minutes prior to trial," and his further finding that "justice has been done, and certainly this defendant has been afforded every opportunity to achieve a full evaluation of his case," we conclude that there was no error in his denial of the defendant's *third* motion for a new trial in so far as the motion was based on the inconsistency in Carr's testimony. As we have previously noted, such inconsistency also appeared in the transcript of the probable cause hearing which *"was used exhaustively in cross-examination of Officer Carr."* (See part A, par. 7, *supra.*)

(e) The defendant contends that his constitutional right to a fair trial was violated in another respect by the prosecutor's failure to provide him with the transcript of Carr's grand jury testimony. When the car in question was first stopped by police officers, Gagliardi was driving, the defendant was behind him in the left rear seat, the victim's body was in the right front seat, and Oreto was in the right rear seat. The officers discovered an unfired derringer on the floor of the car behind the driver's seat. At the trial the prosecutor argued that the jury could infer that the defendant had dropped the derringer to the floor of the car. The defendant now claims that the part of Carr's grand jury testimony which is reproduced in the margin[3] was in some way exculpatory on that point and should have been

---

[3] The part of Carr's testimony on this point was the following:

COUNSEL FOR THE COMMONWEALTH: "From the position of the Derringer, could it have been slipped under the front seat or around the front seat in any manner, assuming that Gagliardi was the man driving, indicating that he might have had control of that weapon?"

THE WITNESS: "Gagliardi: I suppose he could have."

COUNSEL FOR THE COMMONWEALTH: "From the position of the gun it could have been slipped from the front to the back?"

THE WITNESS: "Oh, I don't know that. I don't know."

given to him by the prosecutor at or before trial. We dis-
agree. Carr's statement to the grand jury was not excul-
patory as to the derringer. It indicates that Carr had no
personal knowledge whether the derringer "could have
been slipped from the front to the back" of the car by Gag-
liardi. Carr would not have been permitted to engage in
conjecture or speculation thereon at the trial. The judge
correctly rejected this contention, and in doing so he
quoted the following statement from *United States* v.
*Keogh,* 391 F.2d 138, 148 (2d Cir. 1968), repeated in *Com-
monwealth* v. *Earl,* 362 Mass. 11, 15 (1972): "To invali-
date convictions in such cases because a combing of the
prosecutors' files after the trial has disclosed evidence pos-
sibly useful to the defense but not likely to have changed
the verdict would create unbearable burdens and uncer-
tainties."

2. *Alleged improper remarks by prosecutor.*   In our orig-
inal decision in *Commonwealth* v. *DeChristoforo,* 360 Mass.
531, 536-539 (1971), we reviewed the alleged improper re-
marks of the prosecutor in his argument to the jury, and
we concluded (at 539) that "[i]n any event, the remarks
... were insignificant and harmless as viewed in the con-
text of the great weight of evidence of guilt." The United
States Supreme Court reached substantially the same re-
sult thereon in *Donnelly* v. *DeChristoforo,* 416 U.S. 637
(1974), thereby reversing the contrary holding in *DeChris-
toforo* v. *Donnelly,* 473 F.2d 1236 (1st Cir. 1973). The
defendant recognizes the finality of those decisions on the
subject of the remarks in question, and does not ask us to
review or reverse our decision thereon. However, the
defendant asks us to exercise our power under G. L. c. 278,
§ 33E, to order a new trial "in the light of the prosecutor's
prejudicial and grossly improper argument, compounded
by his suppression of Officer Carr's testimony." We decline
to do so.

We have already concluded above that there was no
error in the denial of a new trial in so far as any incon-
sistency in Carr's testimony was concerned. This court
and the United States Supreme Court have previously

concluded that there was no error in denying relief on the basis of the prosecutor's remarks. In these circumstances, this is not a proper case in which to exercise our extraordinary powers under G. L. c. 278, § 33E, assuming the statute applies at this stage in the now prolonged litigation in this case.

3. *Degree of the defendant's guilt.* Another ground on which the defendant now seeks relief from this court is that the defendant was convicted by a jury of murder in the first degree and was sentenced to life imprisonment without the benefit of consideration for release on parole, whereas the codefendants Oreto and Gagliardi, who he says "actually fired the shots which killed the victim . . . were permitted to plead to second degree murder, thereby making them eligible for parole in the future. G. L. (Ter. Ed.) c. 127, § 133A." The defendant is asking that we order a new trial on this ground in the exercise of our power under G. L. c. 278, § 33E. The request is denied.

As a part of our decision in *Commonwealth* v. *DeChristoforo*, 360 Mass. 531, 544 (1971), we reviewed this entire case under § 33E, and we concluded that "[o]ur review indicates that it was open to the jury to return the verdict which they did, and that justice does not require the entry of a verdict of a lesser degree of guilt than that returned by the jury or that there be a new trial." Nothing has been brought to our attention which persuades us that we should now decide otherwise, assuming it is open to the defendant to make a new plea for relief under the statute. In *Commonwealth* v. *Simpson,* 370 Mass. 119, 126-127 (1976), the defendant had been found guilty of murder in the first degree and this court was asked, as a part of its initial review of the case under § 33E, to reduce the defendant's degree of guilt because a codefendant had been found guilty of murder in the second degree. We declined to do so, saying: "The record which comes before us, all of which we must consider in performing our duty under § 33E, is the record of the proceedings involving the defendant. Under § 33E, in these circumstances, we cannot consider allegedly unfairly disparate sentences imposed on

the defendant and another." See *Commonwealth* v. *Williams,* 364 Mass. 145, 150-152 (1973).

### C. CONCLUSION AND ORDER.

For all of the foregoing reasons, we hold that the denial of the defendant's *third* motion for a new trial in each of the two cases involved in this appeal was not error.

*Order denying motion for new
trial affirmed in each case.*