COMMONWEALTH vs. RICHARD H. LIEBMAN.

Middlesex.   November 3, 1982. — March 16, 1983.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal,* Disclosure of evidence before Federal grand jury, New trial. *Grand Jury.*

Where a defendant convicted in a State court of conspiracy to commit armed robbery had been denied access to certain Federal grand jury testimony at his trial, and where the introduction of the Federal grand jury testimony of one of the two principal prosecution witnesses that she had not received threats regarding her testimony and that she first learned of the robbery several days after its occurrence, to impeach her inconsistent trial testimony that the defendant had twice threatened her and that she knew about the planned robbery before it happened, might have created a reasonable doubt that did not otherwise exist, the defendant was entitled to a new trial.  [488-489]

INDICTMENT found and returned in the Superior Court on June 9, 1977.

Following the decision of this court reported in 379 Mass. 671 (1980), a motion for a new trial was heard by *Dimond,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Vincent Brogna* (*Robert S. Potters* with him) for the defendant.

*Carmel A. J. Motherway,* Assistant District Attorney, for the Commonwealth.

LYNCH, J.   On December 7, 1977, the defendant was convicted of conspiracy to commit armed robbery of a bank while masked or disguised.   He was sentenced to a term of imprisonment not exceeding ten years nor less than seven years.   This court heard the defendant's appeal in *Commonwealth* v. *Liebman,* 379 Mass. 671 (1980) (*Liebman I*).  Because the defendant had been denied access to the Feder-

al grand jury testimony of the two principal witnesses against him, we remanded the case for further proceedings and directed the district attorney to take whatever steps were appropriate to secure the minutes in question. We stated that if "the minutes might create a reasonable doubt that did not otherwise exist, a new trial may be appropriate. . . . If they do not, the verdict and judgment may be permitted to stand." *Id.* at 676.

After the district attorney applied to the Federal District Court for release of the testimony, the Federal court transmitted the grand jury testimony of these two witnesses to the Superior Court. The judge then made the testimony available to both parties. On the defendant's motion, the judge held a hearing to consider the potential effect the absence of these Federal grand jury minutes had on the defendant's trial. The judge concluded that this testimony "could not create a reasonable doubt that did not otherwise exist. *Commonwealth* v. *Liebman,* [379 Mass. 671, 676 (1980)]." However, from our independent review of this testimony and the trial transcript and based on the standard we set forth in *Liebman, I,* we conclude that this testimony "might create a reasonable doubt that did not otherwise exist." Accordingly, we vacate the order denying a new trial.

1. *The prior proceedings.* The two principal prosecution witnesses at the defendant's trial were Milton Schnapf and Deborah Hahn who testified to the following facts. The defendant, Richard H. Liebman, a Massachusetts attorney, had performed occasional legal services for Schnapf and later participated in Schnapf's business operations which involved ownership of fast food restaurants. Early in 1975, the defendant suggested that Schnapf add Stanley Ulatowski, a paroled bank robber, to the payroll of one of the restaurants. The three men then planned a bank robbery which was executed by Ulatowski and two other men on February 26, 1975. Deborah Hahn, a manager of one of Schnapf's restaurants, was brought into the conspiracy to provide Ulatowski with an alibi at the time of the robbery.

Both Hahn and Schnapf testified to meetings and conversations with the defendant both before and after the robbery.

Ulatowski was arrested the week after the robbery.[1] Schnapf fled to Florida on March 9, 1975. On March 11, Hahn was called before a Federal grand jury and briefly questioned about her knowledge of the robbery. On May 13, 1975, she was recalled before the grand jury and questioned more extensively about her knowledge of the events preceding and following the robbery. After being arrested in Florida and indicted for his participation in the crime, Schnapf testified before the Federal grand jury on February 19, 1976.

The defendant argues that the Federal grand jury testimony of Hahn and Schnapf contains exculpatory evidence. We have reviewed the testimony of these witnesses both before the grand jury and at trial. A reading of Schnapf's grand jury testimony reveals, as the judge at the hearing below found, that Schnapf specifically and fully implicated Liebman in the plotting and the concealment of the robbery. Differences between Schnapf's grand jury and trial testimony involved only matters of detail, such as the precise sequence of meetings between Schnapf and Liebman after the robbery and whether Liebman or Schnapf initiated a telephone call after the robbery.

A comparison of Hahn's grand jury testimony with her subsequent trial testimony, however, reveals more serious inconsistencies.[2] Near the beginning of each of her appearances before the grand jury Hahn was asked, "Has anyone made any threats against you, or threatened to take any action against you, directly or indirectly, to prevent you from giving testimony before the Grand Jury or causing you to testify in any manner." She answered, "No," both times. At the trial, however, she testified to having been threatened

---

[1] He was subsequently tried for the robbery in Federal court, but was found not guilty. He did not testify at the defendant's trial.

[2] Hahn testified at the trial under a promise that she would not be subjected to State prosecution.

several times. She said that on the night following the robbery Liebman told her twice that he and the other conspirators had a lot of friends and that she should say nothing to anyone. During one of these conversations she said that Liebman added that she could "end up getting hurt" if she told the authorities of her knowledge of the robbery. At the grand jury, Hahn testified that she had discussed her prior appearance before the grand jury with Liebman. Although the Federal prosecutor told Hahn she need not disclose communications with her attorney, whom the prosecutor assumed was Liebman, this disclaimer concerning conversations with Liebman came long after the prosecutor asked her if she had been threatened in connection with her grand jury testimony. Therefore the disclaimer does not explain her answer. She also told the grand jury that she first learned of the robbery several days after its occurrence, but at trial her testimony revealed that she knew about the planned robbery before it happened and that she knew about its occurrence and who was involved promptly after the event.

2. *The standard of review.* In *Liebman I*, we recognized that for a defendant attempting to obtain pretrial discovery in a case such as this the presence of "two sovereignties creates a potentiality for unfairness which would need correction if realized in practice." *Id.* at 674. In this case, this basic unfairness occurred. Despite initiating several legal proceedings,[3] the defendant was unable to obtain access to the Federal grand jury testimony of the two principal witnesses against him at the State trial although the defendant would have been entitled under State law to the testimony if it had been given before a State grand jury. *Commonwealth* v. *Stewart*, 365 Mass. 99, 105-108 (1974). Similarly, if all the proceedings had been Federal, a Federal statute would have mandated the same result. 18 U.S.C. § 3500 (1976). To remedy this unfair situation we ruled in the

---

[3] The defendant brought two proceedings in the Federal court and filed a variety of motions in the State court in his attempt to obtain the grand jury testimony.

defendant's prior appeal that assimilation of the State and the Federal proceedings was appropriate for the purpose of considering this grand jury testimony. *Liebman I, supra* at 674. The defendant now argues that because he was denied access to the grand jury testimony of Schnapf and Hahn, which the defendant claims contains exculpatory evidence, his conviction was obtained in violation of his constitutional right to the discovery of material evidence as established by the Supreme Court in *Brady* v. *Maryland,* 373 U.S. 83 (1963), and further elaborated in *United States* v. *Agurs,* 427 U.S. 97 (1976). As a preliminary matter we note that the issues presented here are not controlled by the precise holdings of *Brady* and *Agurs* that suppression by the prosecution of requested material evidence which is favorable to the accused is a denial of due process. To establish such constitutional error arising from a prosecutor's failure to produce *Brady* material three elements must be shown: (a) suppression by the prosecution after a request by the defense; (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence. *Brady, supra* at 87. See *Commonwealth* v. *DeChristoforo,* 371 Mass. 26, 34-35 (1976); *Commonwealth* v. *Stone,* 366 Mass. 506, 511 (1974). Since the State prosecutor apparently possessed no control over the Federal grand jury minutes it has not been shown that he suppressed them and, thus, the first requirement for proving a *Brady* violation has not been established here.

Nevertheless, the general principles set forth in *Brady* and *Agurs* for determining "the evidence's favorable character for the defense" and for evaluating the "materiality of the evidence" are useful in deciding whether the minutes "might create a reasonable doubt that did not otherwise exist." *Liebman I, supra* at 676.[4]

---

[4] This is consistent with our statement in *Liebman I, supra* at 676, that "[i]f the minutes might create a reasonable doubt that did not otherwise exist, a new trial may be appropriate." See *Commonwealth* v. *DeChristoforo,* 371 Mass. 26, 34-38 (1976) (involving access to State grand jury minutes and quoting extensively from the *Agurs* opinion). We note that

In *Brady,* the Supreme Court held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady, supra* at 87. In *Agurs,* the Court, in analyzing the holding in *Brady,* stated that "implicit in the requirement of materiality [of the evidence] is a concern that the suppressed evidence might have affected the outcome of the trial." *Agurs, supra* at 104. This standard of materiality "must reflect our overriding concern with the justice of the finding of guilt. . . . [I]f the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed." *Id.* at 112. This necessarily requires that the omission of the evidence be evaluated in the context of the entire record. *Id.* at 112-113. *Commonwealth* v. *Ellison,* 376 Mass. 1, 23 (1978). If, after reviewing this evidence, "there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." *Agurs, supra* at 112-113.

After reviewing the grand jury testimony and applying the test set forth in *Liebman I,* the judge below concluded that this evidence could not have created a reasonable doubt that did not otherwise exist. We disagree. We believe that introduction of Hahn's grand jury testimony to impeach her trial testimony might have created a reasonable doubt which did not otherwise exist. Hahn was one of the two major witnesses against the defendant. As we noted in *Liebman I* at 673: "Apart from the testimony of these two

---

the standard of review put forth in *Liebman I* for evaluating the potential effect this evidence might have had on the jury requires that this defendant meet a less exacting standard of proof than the constitutional requirements of *Brady* and *Agurs.* See *Agurs, supra* at 112 ("[i]t necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed").

witnesses, there was no case against the defendant." If Liebman had been in possession of the grand jury minutes at the trial and had made their contents known to the jury, the jury could have found that the grand jury testimony by Hahn that she was not threatened substantially undercut her trial testimony that Liebman told her that he had friends and that she could get hurt if she told what she knew. This coupled with her inconsistent testimony concerning when she first learned of the robbery might have made a difference to the jury. Evidence which impeaches the credibility of a key prosecution witness is exculpatory for the defendant and is clearly material. *Commonwealth* v. *Collins,* 386 Mass. 1, 8 (1982). *Commonwealth* v. *Ellison, supra* at 22.

Where the Commonwealth's case depends so heavily on the testimony of a witness we believe that the jury might reasonably have been influenced by this evidence which seriously undermines the credibility of that witness and that a reasonable doubt that did not otherwise exist might have been created in the jurors' minds. See *Agurs, supra* at 112-113; *Commonwealth* v. *Collins, supra* at 12.

The judge's otherwise complete and detailed findings attached no significance to these inconsistencies, perhaps because he found that "Hahn's testimony would also have been an aid to the prosecution." Our analysis of this finding is colored by the fact that when a judge undertakes to decide if a grand jury transcript benefits the defendant's case he is "assuming vicariously and uncomfortably the role of counsel." *Commonwealth* v. *Stewart,* 365 Mass. 99, 105 (1974). We think it inappropriate for a judge to assume that role. Although opening up the grand jury minutes might support the contention that Liebman was a conspirator, the fact remains that the serious inconsistencies between Hahn's grand jury testimony and her trial testimony also "might have" caused the jury reasonable doubt about a case that heavily depends on Hahn's testimony.

For the foregoing reasons, we conclude that the defendant must be afforded a new trial and we remand the case to the Superior Court with instructions to grant the defendant's motion.

*So ordered.*