## COMMONWEALTH *vs.* JAMES JONES.

Hampden. October 3, 1988. — March 14, 1989.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Evidence*, Privileged communication. *Social Worker. Department of Social Services. Practice, Criminal*, Discovery.

The judge in a criminal case, in which the defendant was charged with sexual abuse of three minors, was, on the defendant's motion asserting a need vital to his defense, to examine in camera the records of the Department of Social Services pertaining to a care and protection petition brought by the department on behalf of the child victims and to make available for inspection by counsel such parts of the records, if any, that the judge determined were material to the defendant's defense. [341-344] LYNCH, J., dissenting, with whom NOLAN, J., joined.

INDICTMENTS found and returned in the Superior Court Department on March 21, 1986.

A pretrial motion was heard by *Raymond R. Cross*, J., who reported a question of law to the Appeals Court. The Supreme Judicial Court transferred the case on its own initiative.

The case was submitted on briefs.

*Tina S. Page* for the defendant.

*Matthew J. Ryan, Jr.*, District Attorney, & *William T. Walsh*, Assistant District Attorney, for the Commonwealth.

*Lila Heideman*, Assistant Attorney General, *Christina L. Harms & M. Francisco Palomo*, for the Department of Social Services, amicus curiae.

HENNESSEY, C.J. This case is here on report of a question by a Superior Court judge pursuant to Mass. R. Crim. P. 34 and Mass. R. A. P. 4. In March, 1986, a Hampden County grand jury indicted the defendant, James Jones, on three counts of indecent assault and battery of a child under fourteen years of age, two counts of rape of a child by force, and one count of threat to do bodily harm. The defendant allegedly sexually

abused the three minor children, ages four, five, and ten, of the woman with whom he was living.

In October, 1986, the defendant filed in the Superior Court two pretrial discovery motions: (1) seeking to inspect and copy any and all records and reports concerning the alleged sexual abuse, filed by the Department of Social Services (DSS) with the district attorney's office pursuant to G. L. c. 119, § 51B, and (2) requesting that the court conduct an in camera inspection of the DSS records pertaining to the care and protection petition brought by DSS on behalf of the alleged child victims.

The Superior Court judge allowed, under the explicit terms of G. L. c. 112, § 135 (f), the defendant's first motion seeking to inspect and copy DSS records filed pursuant to G. L. c. 119, § 51B. This litigation concerns the defendant's second motion, requesting that the court conduct an in camera inspection of other DSS records. The defendant's motion did not state any particularized need or call the court's attention to any specific report or document which contained pertinent information. The defendant made the request, however, by stating that the record was "vital to and consistent with his defense," and that being deprived of it would "impede preparation" of his defense.

The judge ordered that a subpoena duces tecum be served on the DSS, requiring production of the DSS records for an in camera inspection. DSS delivered the entire case record to the court. This record details the DSS's involvement with the children. Neither the defendant nor the district attorney has examined the case record.

In April, 1987, the judge entered a memorandum and order, ruling that a conflict existed between the principles enunciated in *Commonwealth* v. *Collett*, 387 Mass. 424 (1983), and *Commonwealth* v. *Liebman*, 388 Mass. 483 (1984). The judge subsequently ordered that the defense attorney, the prosecutor, and the guardian ad litem for the children, solely as officers of the court, examine the records. The court would then entertain a motion for an in camera hearing to determine the admissibility of any records the defense attorney wished to use at trial. The district attorney objected. The judge then rescinded his order, and reported the following question to the Appeals

Court: "Where a defendant has made a request for information (claiming it would be helpful to him) to be supplied to him from records otherwise confidential, should this be done by means of an in-camera inspection by a justice of the Superior Court or should the inspection be left to attorneys for the defendant and the Commonwealth?" We transferred the case to this court on our own motion.

Determining whether the records can be disclosed to the defendant requires an examination of the scope of the statutory privilege for communications to social workers created in G. L. c. 112, § 135. See *Allen* v. *Holyoke Hosp.*, 398 Mass. 372, 376 (1986). General Laws c. 112, § 135, prohibits a social worker, except in seven specified circumstances, from disclosing information acquired from persons consulting the social worker in a professional capacity. *Id.* at 376-377.

The issue raised by the defendant's first motion is specifically addressed by G. L. c. 112, § 135 (*f*). Section 135 (*f*) creates an exception for information which "the social worker has acquired . . . while conducting an investigation pursuant to section fifty-one B of chapter one hundred and nineteen." General Laws c. 119, § 51B, requires that the department notify the district attorney of, and transmit a written report of, the investigation and evaluation of any child abuse or neglect case resulting in the death, sexual assault, brain damage, sexual exploitation, or serious bodily injury of a child. G. L. c. 119, § 51B (4) (*a*)-(*e*). Sections 135 (*f*) and 51B, read together, allow a criminal defendant to obtain the investigation and evaluation reports which ultimately led to his indictment and criminal prosecution.

The defendant in this case seeks further information, specifically "the records of the Care and Protection of the . . . Children currently in the custody of the Department of Social Services." The defendant does not, and could not, successfully, argue that these records fall within any of the seven exceptions in G. L. c. 112, § 135, which prohibits disclosure of such confidential information. Instead, the defendant argues that his right to a fair trial, as mandated by the Fifth and Fourteenth Amendments to the United States Constitution, requires that he have

access to all exculpatory material. The defendant does not raise, and we do not address, the cognate provisions of the Massachusetts Declaration of Rights or what the result would be under State law.

In enacting § 135, the Legislature recognized that maintaining the confidentiality of communications acquired by a social worker is necessary for successful social work intervention. *Allen* v. *Holyoke Hosp.*, 398 Mass. 372, 377 (1986), citing *Commonwealth* v. *Collett*, 387 Mass. 424, 428 (1982). The statutory exceptions to the social worker privilege reflect the legislative goals of protecting confidential relationships as well as protecting the well-being of children. *Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 397 Mass. 659, 662 (1986), citing *Commonwealth* v. *Collett, supra* at 434. "Child abuse is one of the most difficult crimes to detect and prosecute, in large part because there often are no witnesses except the victim. . . . It therefore is essential that the child have a state-designated person to whom he [or she] may turn, and to do so with the assurance of confidentiality. Relatives and neighbors who suspect abuse also will be more willing to come forward if they know that their identities will be protected." *Pennsylvania* v. *Ritchie*, 480 U.S. 39, 60 (1987). We have, accordingly, carefully construed the scope of the privilege and its exceptions. See, e.g., *Allen* v. *Holyoke Hosp.*, *supra* at 375-382 (stating that G. L. c. 112, § 135, protects the confidentiality of communications to DSS workers by a child's grandparents and foster parents); *Commonwealth* v. *Collett, supra* at 438 (concluding that a judge should conduct an in camera review to determine whether information falls within the G. L. c. 112, § 135 [*b*], exception for information which reveals the contemplation or commission of a crime or harmful act).

General Laws c. 112, § 135, does not establish an absolute privilege against disclosure. Contrast G. L. c. 233, § 20J (stating that confidential communications between a sexual assault counsellor and sexual assault victim "shall not be subject to discovery and shall be inadmissible in any criminal or civil proceeding without the prior written consent of the victim");

G. L. c. 233, § 20A (stating that a member of the clergy "shall not, without the consent of the person making the confession, be allowed to disclose a confession"). Nor does § 135 create an explicit exception that allows release of confidential records to a court issuing a court order. Section 135, therefore, neither creates an absolute privilege, nor establishes guidelines for the release of confidential records to a court or to a defendant requesting information from the records. The statute does in general, however, prohibit disclosure of information given to social workers in their professional capacity. A judge, therefore, should tread very carefully, and should not lightly intrude upon the confidentiality of such records.

In *Pennsylvania* v. *Ritchie*, the United States Supreme Court held that a defendant was entitled to know whether a State agency's confidential and privileged files contained exculpatory evidence, but that Ritchie's interest in a fair trial would be adequately served by an in camera review by the trial judge. *Ritchie, supra* at 61. The Court's holding that Ritchie was constitutionally entitled to an in camera review was grounded at least in part on the well settled principle that "the government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." *Id.* at 57. See *United States* v. *Agurs*, 427 U.S. 97 (1976); *Brady* v. *Maryland*, 373 U.S. 83, 87 (1963).

Ritchie's assertion that the Pennsylvania agency's file might contain the names of favorable witnesses and other unspecified exculpatory evidence went no further than to demonstrate a realistic and substantial possibility that the file contained information helpful to his defense. That was enough, the Supreme Court ruled, to entitle him to an in camera inspection.[1] We

---

[1] We emphasize that the circumstances of this case are not exactly like the circumstances of *Pennsylvania* v. *Ritchie, supra*, in which the State statute explicitly allowed disclosure of a protective service agency's report to a "court of competent jurisdiction pursuant to a court order." Nor is this case exactly like *Commonwealth* v. *Two Juveniles*, 397 Mass. 261 (1986), in which the statutory prohibition against disclosure of the privileged information was absolute. The Supreme Court has determined that the intensity of the State's interest in nondisclosure is significant in testing the overriding

think it is clear that the defendant in the case before us made at least a similar showing. We conclude that *Ritchie* requires, in this case, an in camera inspection of the records by the judge for the purpose of determining whether the records contain information material to the defense. In recognition of the Legislature's determination that these are confidential records, and in recognition of the important reasons for confidentiality in such matters, we conclude that counsel should not at this stage be permitted to examine the records.

The defendant quotes language from *Commonwealth* v. *Liebman*, where we stated that we thought it was inappropriate for a judge to assume the role of counsel by trying to decide if a grand jury transcript benefits the defendant's case. *Commonwealth* v. *Liebman,* 388 Mass. 483, 489 (1983), citing *Commonwealth* v. *Stewart*, 365 Mass. 99, 105 (1974). *Liebman* is, however, inapplicable to this case because it did not concern a statutorily created testimonial privilege. Chapter 112, § 135, imposes the duty of confidentiality on a social worker and the DSS, and thus imposes a duty on a judge to discern the confidential nature of a particular communication.

We answer the judge's question by stating that the judge should examine the DSS records in camera, and should make available for inspection by counsel, such parts of the records, if any, that the judge determines are material to the defendant's defense.[2]

*So ordered.*

---

force of a defendant's due process claim of a right to access. *Ritchie, supra.* In light of the Supreme Court's discussion in *Ritchie*, we believe that, in the somewhat different circumstances of this case, the Supreme Court would order an in camera inspection of the DSS records by the judge to determine whether they contain any exculpatory information.

[2] The parties state that, according to the practice in the Superior Court in Hampden County, if a trial judge determines on in camera inspection of DSS records that portions may be exculpatory to the defendant, an order of notice is issued to DSS ordering it to show cause why such portions should not be made available to both the prosecutor and the defendant. The judge then conducts a hearing to determine whether the confidentiality of the records is overridden by the defendant's constitutional right to a fair trial. This affords the DSS its first opportunity to be heard in any given case.

LYNCH, J. (dissenting, with whom Nolan, J., joins). I would permit inspection by the defense attorney under controlled circumstances (such as contained in the judge's first order), followed by an in camera hearing to determine the admissibility of any records the defense attorney wished to use at trial. I agree with the court that this result is not mandated by *Commonwealth* v. *Liebman*, 388 Mass. 483 (1983). However, *Liebman* does provide us with a beacon that illuminates the course to be followed here.

At the outset, my analysis differs significantly from that of the court. This case is not about the extent of the privilege of confidentiality created by G. L. c. 112, § 135. The court correctly points out that § 135 "neither creates an absolute privilege, nor establishes guidelines for the release of confidential records to a court or to a defendant requesting information from the records." *Ante* at 343. The court concedes that a defendant is entitled to know whether a State agency's confidential records contain exculpatory evidence. What this case is about, therefore, is the method of ascertaining whether circumstances exist that require disclosure. Someone must examine the records to make that determination. At this point, I return to *Commonwealth* v. *Liebman*, *supra* at 489: "[W]hen a judge undertakes to decide if [evidence] benefits the defendant's case he is 'assuming vicariously and uncomfortably the role of counsel.' *Commonwealth* v. *Stewart*, 365 Mass. 99, 105 (1974). We think it inappropriate for a judge to assume that role." If one concedes, as does the court, that there is nothing in the statute that prevents the judge from examining the records to determine if they should be made available to the defendant, then it follows inexorably that there is nothing in the statute that prevents the judge's designee (defendant's counsel) from making the inspection. An examination of the records in this manner creates a reasonable opportunity for the defendant to ask the judge, in camera, that some information in the records be made available at trial. It is a necessary reading of the statute that permits a judge to examine the records. Nowhere is a judge explicitly or impliedly prevented from delegating that task to the person most able to perform

it, the defendant's attorney, while retaining his own traditional neutral role. It would be appropriate under such circumstances for the judge to bar the further disclosure to anyone, including the defendant, of the information in the records absent an order of the court. I do not base my view on the requirements of the Federal or State Constitution, but rather on what is fair and in recognition of the traditional roles of judge and attorney.