COMMONWEALTH *vs.* STEVEN PRATT.

No. 96-P-374.

Plymouth. April 16, 1997. - May 22, 1997.

Present: BROWN, DREBEN, & LENK, JJ.

*Evidence,* Privileged communication, Communication with social worker, Fresh complaint. *Constitutional Law,* Confrontation of witnesses, Fair trial.

At the trial of an indictment for indecent assault and battery on a child under fourteen years of age, the judge erred in refusing to allow the defendant to introduce evidence of lack of a fresh complaint by the complainant to her Department of Social Services case worker. [699-702]

COMPLAINT received and sworn to in the Wareham Division of the District Court Department on March 1, 1994.

After a motion for production of certain records was heard by *Baron H. Martin,* J., the case was tried in the jury session of that division before *John C. Wheatley,* J.

*Carlo Obligato,* Committee for Public Counsel Services, for the defendant.

*Kathleen A. Adams,* Assistant District Attorney, for the Commonwealth.

BROWN, J. After trial by jury-of-six in the District Court, the defendant was convicted of one count of a two-count criminal complaint for indecent assault and battery on a child under fourteen years of age. G. L. c. 265, § 13B. The judge allowed the defendant's motion for a required finding of not guilty on the remaining count.[1] The defendant is the complainant's uncle and the incidents were alleged to have occurred in Wareham during the summer of 1993, when the complainant was eleven years old. During that period, the

---

[1]The judge sentenced the defendant to a term of two years in a house of correction.

complainant slept in the living room of a residence which was also occupied by the complainant's paternal grandmother, her father, the defendant, the defendant's girl friend, and the girl friend's ten year old daughter. On appeal, the defendant claims (1) that it was reversible error for the judge to refuse to allow him to introduce evidence of a lack of fresh complaint by the complainant to her Department of Social Services (DSS) case worker; and (2) that there was error in the admission of testimony by a police officer as to "fresh complaint" by the complainant, on the grounds that the complaint was not made with reasonable promptness and that the officer's fresh complaint testimony added details not testified to by the complainant. We reverse the conviction.

We set forth the necessary background material at some length. In the primary court, a judge ruled that certain records of the Middleboro Counseling Service concerning the complainant and covering the period September, 1994 to early 1995, were privileged and were not relevant to the present trial. The defendant also moved for the production of records of the DSS, about any communications between the complainant and a DSS case worker, Nellie Rivera,[2] as well as investigatory reports. The judge issued an order for production of those records. The record appendix does not contain any findings of the primary court judge with respect to the DSS records, although it is apparent that he examined them. For this we rely on the offers of proof made by counsel at the defendant's trial. At trial in the jury-of-six session, the Commonwealth filed a motion in limine to exclude "evidence of [the] involvement of DSS in [the] family of [the complainant] . . . or any interviews with [the complainant] by DSS workers." This motion was ultimately allowed by the trial judge, who issued written findings and rulings in the aftermath of the trial.

There was testimony from the complainant elicited on cross-examination that during the period in question she met with Rivera. This prompted an objection by the Commonwealth and a lengthy sidebar conference ensued. Trial counsel proffered that Rivera met with the complainant for a

---

[2]The transcript and the defendant's brief carry the spelling of the case worker's name as "Reveira." The trial judge used the name "Miranda," we presume incorrectly. We will employ the spelling used in the Commonwealth's brief.

period of time "after these alleged incidents," and that Rivera would ask the complainant whether she was "safe" and "comfortable" and that the complainant replied in the affirmative. Counsel also indicated that Rivera was on her witness list. Counsel took the position that the complainant's statements to Rivera were prior inconsistent statements and were at odds with her trial testimony during which she claimed to have been abused. Counsel indicated that the primary court judge permitted examination of the DSS records by both her and the prosecutor, and that this was done, but that the records were subsequently lost. Counsel proposed to question the complainant as to whether she talked to Rivera and whether she had told her that she was "safe" and liked living in the Wareham residence. The prosecutor demurred, maintaining that the records were privileged and that the defense was attempting to short-circuit the *Bishop* process[3] and, further, that the complainant's statements were not inconsistent with her trial testimony. Trial counsel responded that she was not moving to admit the records themselves (the records being unavailable in any event). It was represented that the DSS records in question related to a child abuse investigation pursuant to G. L. c. 119, §§ 51A and 51B[4] (which was confirmed by the judge), and that Rivera was not the investigating social worker; the person responsible for the investigation was one Daniel Betencourt. Trial counsel proffered that the § 51B investigation by DSS contained refer-

---

[3]See *Commonwealth* v. *Bishop*, 416 Mass. 169 (1993).

[4]General Laws c. 112, § 135B(f), inserted by St. 1993, c. 339, § 2, which creates an exception with respect to the statutory privilege for communications to social workers, and G. L. c. 119, § 51B, read together, allow a criminal defendant to obtain the investigation and evaluation reports which ultimately led to his indictment and criminal prosecution. See *Commonwealth* v. *Jones*, 404 Mass. 339, 341 (1989). See also *Commonwealth* v. *Arthur*, 31 Mass. App. Ct. 178, 182 n.6 (1991). However, the "underlying raw file" of DSS remains confidential. *Commonwealth* v. *Hyatt*, 31 Mass. App. Ct. 488, 492-493 (1991).

By St. 1989, c. 535, § 1, approved November 17, 1989, the Legislature rewrote G. L. c. 112, § 135, and transferred the substance of that section, as it then existed, to G. L. c. 112, §§ 135A and 135B, which were enacted at the same time. In that original 1989 version, § 135A contained subsection (f), which provided as follows, "where the social worker has acquired the information while conducting an investigation pursuant to section fifty-one B of chapter one hundred and nineteen." In 1993, the Legislature deleted § 135A(f), and re-inserted it as § 135B(f).

ence to Rivera and to her unawareness of the complainant's allegations. Following a recess, the judge indicated that he was going to rule that the conversation with Rivera was privileged, but that in order to determine whether the complainant would waive the privilege, he would conduct a voir dire with the complainant's legal guardian.

The guardian claimed the privilege on the complainant's behalf with respect to communications between the complainant and Rivera. The judge then found the conversations privileged. Counsel pressed on, suggesting that the privilege should yield in the interests of the defendant's constitutional right to cross-examination concerning the allegedly inconsistent statements. The judge then repeated his ruling, observing that in the circumstances there was no necessity for the complainant to say anything to Rivera about the alleged incidents. However, he permitted trial counsel to make one additional offer of proof for the record. That offer of proof, in pertinent part, was as follows: "Nellie Rivera explained to the child her role in the child's life. That it was her role to keep [the child] safe . . . . That she would believe the child. That if anyone made her uncomfortable, if anyone made her unsafe, that [the complainant] should report that to [her]." Counsel stated that she had a conversation with Rivera and that Rivera reported that she asked the complainant, "Has anyone touched you" and that the complainant responded, "No, I am safe." The offer of proof continued: "[T]his is a social worker who explains to all the children she supervises that she specifically is in charge of [their] safety . . . [a]nd time and time again after these alleged incidents, she checked in with the child, at least once a month, to make sure the child was okay . . . [and that the child responded,] . . . 'I'm happy where I am.' "

When cross-examination of the complainant resumed, counsel persisted, asking her if she had spoken with Rivera. The prosecutor's objection was sustained. Posttrial, the judge issued findings and rulings on the Commonwealth's motion in limine, which recited that Rivera was "not investigating any charge of sexual abuse. Rather, she consulted periodically with the child relative to the child's residential placement. The conversations between [Rivera] and the child, which took place after the sexual abuse by the defendant (then unknown to Rivera), were not made in a setting in which the child would be expected to complain. The conversations,

interviews and other communications are, therefore, irrelevant and protected by the privilege."

This was not the end of the matter. During the defense case, trial counsel made reference at sidebar to twelve pages of typed notes in her possession that arose from the "relevancy hearing" concerning the DSS records before the primary court judge. There had been a hearing on February 10, 1995, in that judge's lobby, and the prosecutor was present. The primary court judge determined that the records were privileged but that they might be relevant. He permitted the parties to review the records. Where there was agreement as to lack of relevancy, the papers were sealed and returned to the judge. As to the remaining forty-one pages of documents, the judge apparently concluded that there was relevancy and the parties were then allowed access to them pursuant to a protective order. Before the trial judge, counsel argued that Rivera met with the complainant after the alleged incidents, and there was an absence of a complaint in a setting in which she could be expected to have complained. See and compare *Commonwealth* v. *Rathburn*, 26 Mass. App. Ct. 699, 704 n.3 (1988). Counsel noted that during trial preparation, she discovered the records missing, but that at that point she intended to call Rivera to testify at trial as to the communications in question. The prosecutor disputed that the primary court judge had ruled the records or any portion of them relevant, although she agreed that the parties had culled out records which bore Rivera's signature. The judge thereafter refused to reconsider his ruling disallowing an inquiry as to the communications.

Pursuant to G. L. c. 112, § 135A, a report which contains communications between a social worker and a client is confidential. See *Commonwealth* v. *O'Brien*, 27 Mass. App. Ct. 184, 186 (1989) (DSS investigatory report, because it includes statements made by the victim and others to the investigatory social worker while she was serving in a professional capacity, is privileged). The Legislature has carved out certain exceptions to the statutory privilege. See generally *Commonwealth* v. *Collett*, 387 Mass. 424, 431-436 (1982). One of the exceptions is where "the social worker has acquired the information while conducting an investigation pursuant to [G. L. c. 119, § 51B]." G. L. c. 112, § 135B(f), inserted by St. 1993, c. 339, § 2. See *Commonwealth* v. *Jones*,

404 Mass. 339, 341 (1989). We are at a disadvantage because the DSS records are no longer available; however, the parties appear to agree that the records that were the subject of the dispute derived from a § 51B report. It is likely, therefore, that the investigating social worker interviewed Rivera and the complainant in connection with the § 51B investigation, and that those conversations were contained in the § 51B report. While a defendant is entitled to a § 51B report, that fact does not necessarily lead to the conclusion that constituent documents contained in the § 51B report lose their privilege or confidentiality. See *ibid.*

Nevertheless, in addition to the statutory exceptions, the social worker-client privilege in some instances may yield in a criminal case to a defendant's constitutional right to use privileged communications in his own defense. See, e.g., *Commonwealth* v. *Stockhammer*, 409 Mass. 867, 883 (1991).[5] See also *Commonwealth* v. *Clancy*, 402 Mass. 664, 670 (1988) ("some accommodation must be made in striking a balance between a witness's privilege and the defendant's right to confrontation and a fair trial"). We think the present case is one of those. Here, the complainant's credibility was crucial to the outcome of the case. Although the Commonwealth had indicated that it was intending to put on the witness stand at least three fresh complaint witnesses, it ended up producing only one such witness, Officer Eileen Hinckley, who testified that she was told of the alleged incidents in February, 1994, when the complainant's mother brought the complainant into the Wareham police station. This was approximately seven months after the initial alleged incident in July, 1993, and five months after the second alleged incident which apparently occurred in September, 1993.

The complainant testified that she did not report the first alleged incident because "it was my grandmother's son, and she . . . wouldn't believe me over him." She gave a similar explanation for failing to report the second alleged incident. The complainant eventually told her "Aunt Penny" and her maternal grandmother of the alleged incidents while visiting the latter's home in Middleborough on February 26, 1994. She indicated at that time that she did not want to go home. However, there was testimony elicited from the complainant on

[5]The present trial in November of 1995, was conducted under the regime of *Commonwealth* v. *Bishop*, 416 Mass. 169 (1993).

cross-examination suggesting that she had ample opportunity to tell persons whom she liked about the incidents during the several months she lived in Wareham: the complainant went camping on weekends in Maple Park with a friend; visited "Aunt Beth," her mother's sister, and "Uncle Mike"; and occasionally visited with her mother in New Bedford. Moreover, the complainant testified that she told her paternal grandmother that she liked staying at her home, and she stayed there after school started in September, 1993. This testimony offers support for trial counsel's proffer regarding the DSS records, in which the complainant reportedly told Rivera that she liked living in the Wareham residence.

It is true that counsel was unable to provide specific dates for the privileged communications appearing in the DSS records. However, as an officer of the court, she stated that she compiled detailed notes after examination of the records and a conference with the primary court judge, and she represented that the records showed that Rivera was unaware that the alleged incidents had taken place and that the complainant had not told Rivera about them. Furthermore, she made reference to a specific conversation between the complainant and Rivera in which the complainant had been asked if she had been touched and had responded in the negative. We think the defendant made a sufficient offer of proof and that had such a conversation surfaced at trial, testimony concerning it might have had a significant effect on the trial's outcome, particularly so when Rivera apparently had told the complainant on more than one occasion that it was her job to protect the complainant's safety. We observe that in ruling on the Commonwealth's motion in limine the judge specifically found that the conversations took place after the alleged instances of abuse. In these circumstances, it would have been natural for the complainant to have disclosed the incidents. The judge's finding to the contrary was unwarranted on the record. See and compare *Commonwealth* v. *O'Brien*, 27 Mass. App. Ct. at 187-188 (inconsistencies between version of events told to the investigating social worker and the victim's trial testimony might have affected the victim's credibility, which was crucial to the outcome of the case). We think that the judge should have permitted the veil of confidentiality to be pierced in the interests of a fair trial for the defendant, and that he should either have allowed the complainant to be cross-examined on

the matter to draw out what was tantamount to a prior inconsistent statement (she told Rivera she had not been touched), or that he should have permitted the defense to call Rivera, who was apparently available for a time during the trial. "The defendant's right to show lack of fresh complaint is correlative with the Commonwealth's duty to show that such complaint was made." See and compare *Commonwealth v. Izzo*, 359 Mass. 39, 44 (1971). The purported communication was relevant to a possible motive to fabricate on the part of the complainant, which was a theme of the defense at trial. In the view we take of the case, it is not necessary that we address the issue of whether the fresh complaint testimony of Officer Hinckley was properly received. We conclude that there should be a new trial.

*Judgment reversed.*

*Verdict set aside.*