COMMONWEALTH vs. KONSTANTINOS KOULOURIS.

Middlesex. September 12, 1989. - December 14, 1989.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Controlled Substances. Evidence*, Bias, Cross-examination. *Witness*, Bias.
*Entrapment.*

At the trial of indictments charging trafficking in cocaine in excess of
twenty-eight grams, the judge erred in refusing to permit the defendant
to test the possible bias of a key prosecution witness, a Federal drug
agent, by cross-examining the agent concerning his interest and involve-
ment in a pending Federal forfeiture proceeding involving the defend-
ant's house. [284-287] NOLAN, J., dissenting.


INDICTMENTS found and returned in the Superior Court
Department on September 17, 1987.

The cases were tried before *Guy Volterra*, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*John C. McBride* for the defendant.

*Judy G. Zeprun*, Assistant Attorney General, for the
Commonwealth.

O'CONNOR, J. The defendant was convicted in the Supe-
rior Court on two indictments for trafficking in cocaine in
excess of 28 grams. The Appeals Court affirmed. 26 Mass.
App. Ct. 1124 (1989). We granted the defendant's applica-
tion for further appellate review.

The defendant argues only one issue in this court. He chal-
lenges the trial judge's refusal to permit him to test the possi-
ble bias of a key prosecution witness by cross-examining the
witness concerning his interest and involvement in a pending
Federal forfeiture proceeding involving the defendant's
house. We agree with the defendant that the cross-examina-
tion was erroneously and prejudicially excluded. Therefore,

we reverse the convictions and remand the case for a new trial.

The indictments were predicated on two sales of cocaine by the defendant to a United States Department of Justice Drug Enforcement Administration (DEA) special agent, Stephen Murphy. Also, as a result of the sales, the defendant's home became the subject of a civil forfeiture proceeding in the United States District Court for the District of Massachusetts pursuant to 21 U.S.C. § 881 (a)(7) (Supp. 1989). At the defendant's criminal trial, he did not dispute that the two sales of cocaine had taken place or, indeed, that a third, earlier sale had occurred. Rather, he took the position that he had been entrapped.

DEA agent Murphy was the Commonwealth's principal witness. The only other prosecution witness was Boston police Detective Benjamin "Bennie" Leong. There were only two defense witnesses, the defendant and his wife. Murphy's and the defendant's testimony differed sharply in many respects bearing on the issue of entrapment. The defendant testified in relevant part as follows. He first met agent Murphy, who was acting undercover, on June 10, 1987. There were three drug transactions between them. One of these was on June 10, and it involved one quarter of an ounce. That transaction was not the subject of either indictment. The defendant, according to his testimony, had purchased the cocaine solely for his own use, but made the June 10 sale as a favor to his friend who had introduced Murphy to him. There were also sales on June 18 and June 29, 1987, each of which involved two ounces.

According to the defendant's testimony, at the time the defendant met Murphy the defendant was addicted to cocaine, had never sold or distributed it, was deeply in debt, and was the owner of a pizza business that he desperately wanted to sell in order to pay his debts. Murphy represented himself as a businessman who was seriously interested in investing in the defendant's business. The defendant testified that Murphy called him every day from June 10 to June 18, the date of the second transaction, asking for two ounces of cocaine

and assuring him that they could talk business when they would later meet but that Murphy wanted the defendant's help in obtaining the cocaine. The defendant feared that, if he said "no," he would never see Murphy again and would lose the opportunity to meet his indebtedness. After the June 18 transaction, at which only Murphy and the defendant were present, Murphy introduced the defendant to undercover detective Bennie Leong. Leong also expressed interest in buying the defendant's business. The defendant testified that Murphy later told the defendant to watch out for Leong because Leong was a "tough guy," a heroin addict and dangerous.

Between June 18 and June 29, the defendant testified, Murphy was "pressing" him for more cocaine, and the defendant was afraid to turn him down because, if he did, Murphy would not buy his business. The defendant testified that he was afraid of Murphy. In addition, the defendant testified that, on both occasions when he sold Murphy two ounces of cocaine, it took him seven days to obtain it and that he did not profit from the sales. He denied that he possessed paraphernalia appropriate for drug distribution.

The defendant's wife testified that Murphy called the defendant at home "about a hundred times" during the summer of 1987, and that both she and her husband were afraid of Murphy. She testified that on one occasion Murphy said to her, "You'd better tell him to watch out for me."

We turn now to agent Murphy's testimony, much of which was given in cross-examination. It is enough for the purpose of this appeal to say that Murphy's testimony differed significantly from the defendant's. We mention a few illustrations. Murphy testified about the defendant's familiarity with the "street language" of drug distributors and about a triple beam balance scale allegedly in use at the defendant's home. He testified that he called the defendant about twenty times during the summer of 1987, that he never told the defendant to watch out for Leong, and that, when he called the defendant in anticipation of the June 18 sale, the defendant seemed annoyed and said, "That's all?" when Murphy requested

only two ounces. Murphy testified that the defendant quoted him a price for a kilo of cocaine and attempted to set up a delivery of two kilos, which never was completed because the defendant "previewed" the cocaine and found it to be of poor quality. Murphy testified that there was an occasion when the defendant told him that he and his partners had just received a fairly substantial shipment of cocaine which they were breaking up for security purposes.

Before any evidence was introduced, the trial judge granted the prosecutor's motion in limine to preclude testimony concerning the Federal forfeiture proceeding involving the defendant's house. During the cross-examination of agent Murphy, defense counsel sought the judge's permission to inquire about that subject, citing the exposure of bias as his purpose. Counsel argued in substance that Murphy was involved in the forfeiture proceeding, that he had filed an affidavit in support of forfeiture, that convictions of the defendant for trafficking would promote forfeiture, and that forfeiture would be advantageous to the Federal government agency by whom Murphy was employed. Persuaded by the case of *Commonwealth* v. *Sendele*, 18 Mass. App. Ct. 755 (1984), the judge refused to allow cross-examination relative to the forfeiture proceeding.

Entrapment consists of "implanting criminal ideas in innocent minds and thereby bringing about offenses that otherwise would never have been perpetrated." *Commonwealth* v. *Shuman*, 391 Mass. 345, 351 (1984), quoting R. Perkins, Criminal Law 1031 (2d ed. 1969). "The defense of entrapment is appropriately raised . . . by the introduction of some evidence of inducement by a government agent or one acting at his direction. Mere evidence of solicitation is not enough to show inducement, but little more than solicitation is required to raise the issue. . . . When evidence of inducement has been entered, the burden rests upon the Commonwealth to prove beyond a reasonable doubt the predisposition of the defendant to commit the crime." *Id.*, quoting *Commonwealth* v. *Miller*, 361 Mass. 644, 651-652 (1972).

Clearly, there was evidence of inducement in this case. Thus, the Commonwealth had the burden to prove predisposition. It is also clear that Murphy's testimony, and therefore his credibility, were critical on that issue. Because bias is intimately related to credibility, a defendant has the right to cross-examine a prosecution witness in order to reveal bias. As we recently said, "[a] judge may not restrict cross-examination of a material witness by foreclosing inquiry into a subject that could show bias or prejudice on the part of the witness." *Commonwealth* v. *Aguiar*, 400 Mass. 508, 513 (1987). *Commonwealth* v. *Joyce*, 382 Mass. 222, 229-230 (1981).

The trial judge relied on *Commonwealth* v. *Sendele, supra.* In *Sendele,* the Appeals Court affirmed the defendant's conviction of possession with intent to distribute cocaine. The evidence included $33,020 in cash taken from the defendant at Logan Airport in Boston by two Massachusetts State troopers. During the trial of the criminal case, a State forfeiture action was pending against the $33,020. The defendant proposed to cross-examine the officers concerning the forfeiture action to show bias. The Appeals Court noted that "on occasion such forfeits have been ordered paid out to the relevant district attorneys' offices to be expended for drug-law enforcement purposes." The opinion also states that the defendant had argued that the witness-officers' bias "could arise . . . from the possibility that they might benefit personally from a conviction . . . in the sense that it might lead to a judgment for the Commonwealth in the forfeiture action and ultimately to an expenditure from the money recovered for, say, increased overtime services in the detection of drug offenses." "But," the Appeals Court reasoned, "it was problematical what, if any, order a judge might enter and what, if any, use might be made of any money released." The court concluded that the officers' testimony "left little range for the operation of bias," and that the "judge was well within his discretion in excluding the intended cross-examination as being remote and inconsequential." *Sendele, supra* at 760-761.

The present case is significantly different from *Sendele.* Here, the critical testimony of Murphy was surely open to a claim of bias, if indeed any bias could be established. Perhaps of more importance, defense counsel's argument here in support of his right to explore Murphy's connection with the Federal forfeiture proceeding was not premised on the remote and unprovable speculation that Murphy might somehow personally share in the forfeited fund, but, as we shall see, was grounded on more solid footing.

A convicted defendant is collaterally estopped from relitigating in a Federal forfeiture action the issues already disposed of in the criminal case. *United States v. One Parcel of Real Property With the Building, Appurtenances and Improvements Known as 141 Bell Rock St., Everett, Mass.,* No. 88-1943-Z, slip op. (D. Mass. Apr. 20, 1989). *United States v. A Parcel of Land With a Building Located Thereon at 40 Moon Hill Road, Northbridge, Mass.,* 721 F. Supp. 1 (D. Mass. 1988), aff'd, 884 F.2d 41 (1st Cir. 1989). Thus, convictions in this case would result in the defendant's being estopped from denying in the forfeiture proceeding that he unlawfully trafficked in cocaine out of his home, a situation clearly advantageous to the Federal government, Murphy's employer. Given the relationship between the criminal trial and the forfeiture proceeding, together with Murphy's participation in the forfeiture proceeding by filing an affidavit, we cannot say that the proffered evidence of bias was speculative and remote, or inconsequential, nor can we say with confidence that the jury's evaluation of Murphy's credibility would not have been different if the excluded cross-examination had been permitted. At one point, the trial judge expressed the thought that "it's inescapable that Murphy's star will rise at the DEA if there are lots of forfeitures." The jury might have reasoned the same way had they known what the judge knew. Although there was no suggestion that Murphy might profit financially from the forfeiture proceedings, an informed jury might reasonably have decided that the impact of institutional loyalty and related pressures on Murphy's testimony reduced the Commonwealth's proof

to something less than proof beyond a reasonable doubt. That argument appears not to have been made in *Sendele*, but is a valid argument. We conclude, therefore, that the cross-examination should have been allowed, and that its exclusion requires a new trial.

*So ordered.*


NOLAN, J. (dissenting). I dissent. The court's holding that Murphy's filing of an affidavit in a forfeiture proceeding renders him so biased that a jury may evaluate his credibility differently if they knew of his filing the affidavit establishes a dangerous precedent. In the future, will a trial judge be required to allow defense counsel to cross-examine an officer on the possible benefits to him of the defendant's arrest such as a promotion, a commendation or a medal? Is this an appropriate subject matter for cross-examination of a police officer? Today's result bodes ill for the future.