## Commonwealth *vs.* Jonathan Stockhammer.

Middlesex. January 7, 1991. - May 1, 1991.

Present: Liacos, C.J., Wilkins, Abrams, Nolan, Lynch, O'Connor & Greaney, JJ.

*Rape. Evidence,* Cross-examination, Hospital record, Privileged communication. *Constitutional Law,* Fair trial, Confrontation of witnesses. *Practice, Criminal,* Offer of proof, In camera inspection. *Witness,* Bias, Privilege. *Rape-Shield Statute. Social Worker. Privileged Communication.*

At the trial of indictments there was sufficient evidence from which a rational trier of fact could conclude beyond a reasonable doubt that the defendant assaulted the complainant with the specific intent to rape her and that intercourse took place by force and against the complainant's will. [872-873]

In a criminal case the judge properly denied the defendant's motion for a new trial based on the weight of the evidence. [873]

At the trial of indictments for rape and assault with intent to rape in which the defense was consent and credibility was in issue, the judge incorrectly precluded cross-examination of the complainant with respect to her sexual relationship with her boyfriend, designed to uncover evidence that the complainant was biased and motivated to lie. [873-880]

Discussion of the Federal standard (requiring an in camera inspection by the judge) under which privileged records are available to a criminal defendant for use in his defense at trial. [880-883]

This court concluded that, at the retrial of indictments for rape and assault with intent to rape, counsel for the defendant is entitled, under art. 12 of the Massachusetts Declaration of Rights, to review the records of the complainant's inpatient treatment at a hospital and outpatient counseling with a social worker to search for evidence of bias, prejudice or motive to lie, under such procedures and protective orders as the trial judge shall determine to be appropriate in the circumstances. [883-884]

Indictments found and returned in the Superior Court Department on March 30, 1989.

The cases were heard by *John Paul Sullivan,* J., and a motion for a new trial was also heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Nancy Gertner* (*Andrew Good* with her) for the defendant.

*Margaret C. Parks,* Assistant District Attorney, for the Commonwealth.

*Harry C. Mezer,* for Massachusetts Association of Criminal Defense Lawyers, amicus curiae, submitted a brief.

GREANEY, J. The defendant was convicted of rape, and assault with intent to commit rape, after a jury-waived trial in the Superior Court. The defendant appealed, and we transferred the case to this court on our own motion.

The defendant claims error in: (1) the denial of his motions for required findings of not guilty and a new trial based on the weight of the evidence; (2) the preclusion by the judge of cross-examination of the complainant regarding a specific basis for bias and motive to lie; and (3) the denial of his motion for an order authorizing counsel to examine certain treatment records of the complainant. The motions for required findings and for a new trial on the basis of the weight of the evidence were correctly denied. We agree with the defendant, however, that the judge should not have curtailed the cross-examination of the complainant as he did, and that counsel for both sides should have access to the complainant's treatment records. Accordingly, we reverse and remand the case for a new trial.

Both the complainant and the defendant testified that intercourse had occurred, but the evidence in most other respects was highly contradictory. We set forth the evidence and background of the case in some detail, beginning with facts about which there is no dispute. We then proceed to the discussion and decision of the issues.

A. *Undisputed facts.* In the fall of 1987, the defendant and the complainant started as freshmen at Brandeis University. They became close friends. At the same time, the complainant maintained an intimate relationship with a steady boy friend from home. Through the fall and early winter of

1987, the defendant and the complainant were confidants and sometimes spent time alone together in either of their dormitory rooms, but there was no sexual dimension to their relationship. On December 21, 1987, the complainant sent the defendant a birthday card in which she wrote, in part: "[Y]ou're the greatest friend I have, I love you." In March, 1988, the complainant signed a university rooming assignment form requesting to live with several other students, including the defendant. At the time of the central events described in this opinion, the defendant weighed approximately 100 pounds. The complainant weighed roughly 140 pounds.

B. *Events of April 19, 1988.* The complainant testified that, on April 19, 1988, she spent the day with her boy friend, who was in the Boston area visiting MIT, one of at least two schools that he was considering attending the following fall. The boy friend left the area that day at about 5 P.M., and he and the complainant understood at that point that he probably would attend Yale the following year rather than MIT. After the boy friend's departure, the complainant went to dinner with a female suitemate and the defendant.

After dinner, the defendant accompanied the complainant back to her room. There was some conversation about the sexual experiences of a friend of the defendant, then the defendant made an advance toward the complainant (he followed her around the room and pulled at her clothing). The complainant rejected this overture, and the defendant left. Several hours later, the defendant called the complainant, reminded her about a plan that they had made at dinner to drink together that night, told her that he was coming over later, and asked her about procuring alcohol. The complainant agreed to the defendant's visit, then went to a friend's room and borrowed a bottle of "Southern Comfort" brand bourbon whiskey that was nearly full.

The complainant returned to her room and the defendant was there.[1] The complainant consumed one drink of South-

---

[1] The complainant gave several different descriptions of how the defendant gained access to her room at this point. She testified at trial that the

ern Comfort (a plastic cup one-half to three-quarters full). The defendant did not drink. The defendant made some sexual overtures that made the complainant feel uncomfortable and caused her to leave the room for about fifteen minutes, hoping that the defendant would leave. The defendant eventually brought the complainant back to her room. Once there, the defendant locked the door and removed his shirt.

The complainant was sitting on a chair next to the bed. The defendant pushed her from the chair onto the bed and got on top of her. While in this position, the defendant removed his pants, raised the complainant's shirt and skirt, removed the complainant's bra and underpants, and, holding her down, raped her. The complainant shook during the assault, pushed at the defendant with her hands, and told him to stop. During this struggle, the defendant's elbow accidentally struck the complainant's face and drew some blood inside her mouth. Then, sitting on the complainant's chest, the defendant attempted to force her to engage in oral sex. The complainant resisted by shaking her head. The defendant then dressed and left the complainant's room.

After the defendant left, the complainant called a classmate and close friend and told the friend that the defendant had raped her. The friend came over to the complainant's room. Once there, the complainant recounted what had happened, and showed the friend a small cut on the inside of her mouth, but she instructed the friend not to tell anyone about the incident.

The defendant described the events of April 19, 1988, quite differently. The defendant testified that, after dinner, he and the complainant returned to her bedroom, put on some music, danced, and kissed. The complainant then removed her shirt and apparently some mutual fondling occurred. At this point, the defendant left to attend a previously scheduled engagement with some friends. The

defendant let himself into her room. She told a Brandeis police officer when she reported the incident that she admitted the defendant after he knocked on the door. She told her boy friend and another friend that the person who had raped her had forced his way into her room.

defendant returned to the complainant's room later, and found the complainant wearing a bathrobe. The two then resumed the intimacies of earlier that evening, eventually disrobing and engaging in consensual intercourse. When they had finished, the defendant returned to his room. According to the defendant, no drinking occurred at any time during this evening.

C. *Events after April 19, 1988.* In May, 1988, the defendant accepted the complainant's standing offer to visit her at her parents' home in Connecticut. The complainant testified that her purpose in allowing the defendant to visit her was to try to resolve the issue of the rape with the defendant, but that this did not work.[2] According to the complainant, there were no further sexual relations between her and the defendant after April 19.

The defendant testified that he and the complainant had intercourse on numerous occasions after April 19, including on the first night of his visit to her home in Connecticut. When classes resumed the following fall, however, the defendant noticed that the complainant seemed to have lost interest in maintaining their friendship, but he did not know the reason for her changed attitude.

In December, 1988, the complainant and her boy friend ended their relationship. In January, 1989, the complainant ingested a large number of cold pills and was hospitalized at Waltham-Weston Hospital. She reported there that she was having a minor problem with her boy friend, but made no mention of having been raped. Soon thereafter, an anonymous telephone caller told the complainant's father that the complainant was telling others that she had been sexually assaulted. When confronted by her father, the complainant finally told him that the defendant had raped her. She later filed with the Waltham police a report charging the defendant with rape.

---

[2]The complainant told a Waltham police officer that she invited the defendant to her parents' home in the belief that the defendant would attempt to assault her there, and that her father then would catch him.

After her stay at the Waltham-Weston Hospital (January 29-30, 1989), the complainant was treated as an inpatient at the New York Hospital-Cornell Medical Center from February 1-6, 1989. From February 7 through June 6, 1989, the complainant received counseling from a Greenwich, Connecticut, social worker on an outpatient basis. The defendant sought and was allowed access to the Waltham-Weston Hospital records. The judge also ordered the production of any and all records of psychotherapists or counselors who treated the complainant after April 19, 1988. The social worker's records were produced. After an in camera inspection, the court ruled that they need not be disclosed and would not be admitted at trial. The New York Hospital records were not produced at this time. In fact, defense counsel did not learn until after the trial that the complainant had been a patient there. Additional facts appear below in relation to specific claims of error.

1. *Sufficiency of the evidence.* Pointing to weaknesses and contradictions in the Commonwealth's evidence, the defendant argues that the verdict was against the weight of the evidence. There are two apparent aspects to this argument: (1) the judge erred in denying the defendant's motions for required findings of not guilty; and (2) the judge abused his. discretion in denying the defendant's motion for a new trial based on the weight of the evidence.

(a) *Motions for required findings.* "In reviewing the denial of a motion for a required finding of not guilty, we consider whether 'the evidence is insufficient as a matter of law to sustain a conviction on the charge.' Mass. R. Crim. P. 25 (a), 378 Mass. 896 (1979). '[The] question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'. . . 'Thus, to sustain the denial of a [motion for a required finding of not guilty], it is not enough for the appellate court to find some record evidence, however slight, to support each essential element of the offense; it must find that there was enough evidence that could have satisfied a rational trier of

fact of each such element beyond a reasonable doubt.' " (Citations omitted.) *Commonwealth* v. *Good, ante* 612, 617 (1991), quoting *Commonwealth* v. *Mazza,* 399 Mass. 395, 398-399 (1987).

There was evidence that the defendant forced the complainant onto her bed, removed and disarranged her clothes while holding her down, and had intercourse with her while the complainant pushed at him and told him to stop. This was sufficient evidence from which a rational trier of fact could conclude beyond a reasonable doubt that intercourse took place by force and against the complainant's will. See *Commonwealth* v. *Sherry,* 386 Mass. 682, 688 (1982).

There also was evidence that, after the act of intercourse, the defendant sat on the complainant's chest and attempted to force the resisting complainant to take his penis into her mouth. This was sufficient evidence from which a rational trier of fact could conclude beyond a reasonable doubt that the defendant assaulted the complainant with the specific intent to rape her. See *Commonwealth* v. *Nickerson,* 388 Mass. 246, 253 (1983). Accordingly, there was no error in the denial of the defendant's motions for required findings of not guilty.

(b) *Motion for a new trial.* "[W]hether a motion for a new trial based on the weight of the evidence should be granted is a matter left to the sound discretion of the trial judge." *Commonwealth* v. *Cinelli,* 389 Mass. 197, 204, cert. denied, 464 U.S. 860 (1983). The defendant here emphasizes statements in affidavits submitted after the trial by certain Commonwealth witnesses that tend to clarify or modify details of their trial testimony. The judge was not required to credit these statements. There was no abuse of discretion in the denial of the motion for postconviction relief in the form of a new trial.

2. *Restriction on cross-examination.* Pursuant to G. L. c. 233, § 21B (the rape-shield statute), the defendant filed a pretrial motion in limine requesting a ruling on the admissibility of testimony relating to sexual activity of the complainant. The sexual activity that the defendant referred to was

intercourse with the defendant in the weeks following April 19, 1988, and intercourse with her boy friend before and after April 19. The defendant argued in the motion that this testimony was admissible on the issues of consent, bias, and motive to falsify.

During the cross-examination of the complainant, at the point where defense counsel desired to probe the areas covered in the motion, the judge held a sidebar conference and questioned counsel about the evidence. Counsel stated that the testimony concerning the complainant's sexual relationship with her boy friend would support an inference that the complainant was involved in an ongoing relationship with him at the time of the alleged rape. The complainant was motivated to lie about what had happened between herself and the defendant, defense counsel argued, because acknowledgment of a sexual relationship with the defendant could alienate the boy friend. The judge ruled that counsel could inquire whether the complainant had a sexual relationship with the boy friend before April, 1988, but that he could not pursue the issue beyond that.

Based on this conference, defense counsel put the authorized question to the complainant, as well as questions relating to the possible reaction of her boy friend and other friends to the knowledge that the complainant had intercourse with the defendant. Counsel then attempted to move to the topic of the reaction of the complainant's parents to the knowledge that the complainant had been sexually active with her boy friend. The prosecutor objected; the court sustained the objection, and then refused the defendant's offer of proof.[3]

---

[3]DEFENSE COUNSEL: "Did you tell your parents [that prior to April 19th 1988 you had a sexual relationship with your boy friend]?"

THE JUDGE: "Excuse me."

THE PROSECUTOR: "Objection."

THE JUDGE: "Sustained."

DEFENSE COUNSEL: "Did you tell your parents, as of April 19th 1988, that you had a sexual relationship with [your boy friend]?"

THE JUDGE: "No, I've already said that's sustained, counsel."

DEFENSE COUNSEL: "Oh, I'm sorry."

The defendant argues that the judge erred in precluding cross-examination designed to uncover evidence that the complainant was biased and motivated to lie because she did not want her parents to learn that she was sexually active. We agree with the defendant that the judge's restriction on cross-examination was reversible error.

"Because bias is intimately related to credibility, a defendant has the right to cross-examine a prosecution witness in order to reveal bias." *Commonwealth v. Koulouris,* 406 Mass. 281, 285 (1989). "A judge may not restrict cross-examination of a material witness by foreclosing inquiry into a subject that could show bias or prejudice [or motive to lie] on the part of the witness." *Id.,* quoting *Commonwealth v. Aguiar,* 400 Mass. 508, 513 (1987). "If a defendant believes that the judge improperly restrained his cross-examination of a witness, the defendant must demonstrate that the judge abused his discretion and that he was prejudiced by such restraint." *Commonwealth v. Barnes,* 399 Mass. 385, 393 (1987).

The principles protecting a defendant's right to cross-examination are particularly important when the charge is rape, because " '[t]he right to cross-examine a complainant in a rape case to show a false accusation may be the last refuge of an innocent defendant.' " *Commonwealth v. Elliot,* 393 Mass. 824, 828 (1985), quoting *Commonwealth v. Joyce,* 382 Mass. 222, 229 (1981). For this reason, rape convictions have been reversed on a number of occasions because

---

THE JUDGE: "That's beyond the scope of what I said you could have."
DEFENSE COUNSEL: "May I approach the sidebar about that your Honor?"
THE JUDGE: "No."
DEFENSE COUNSEL: "May I state for the record —"
THE JUDGE: "No, counsel, we reviewed at the side bar what you could go over. You did not mention that and you're not going to do it now, that's the end of it.
"Had you done that, I would have reviewed it at that time. At this point in time I rule it's unnecessary. You may proceed."
DEFENSE COUNSEL: "At the side bar, your Honor, I mentioned—"
THE JUDGE: "Counsel, please, the next question."
DEFENSE COUNSEL: "Very well, your Honor."

of rulings by trial judges prejudicially infringing on the right to cross-examine the complainant. See, e.g., *Commonwealth v. Elliot, supra* at 826-832; *Commonwealth v. Joyce, supra* at 225-229; *Commonwealth v. Bohannon,* 376 Mass. 90, 94-94 (1978); *Commonwealth v. Fetzer,* 19 Mass. App. Ct. 1024, 1025 (1985); *Commonwealth v. Carty,* 8 Mass. App. Ct. 793, 794-795 (1979).

In this case, the defense was consent. The evidence in many ways was contradictory, and, even looking only at the complainant's testimony, in some respects was inconsistent with an allegation of rape. Thus, the complainant's credibility was of critical importance. Defense counsel intended to elicit from the complainant that her parents strongly disapproved of premarital sex, and that she was afraid of how they would react to the knowledge that she was sexually active.[4]

If counsel had succeeded in eliciting testimony to this effect, it would have been most helpful to the defendant's case. Such evidence would support the inference that the complainant had reason to lie in addition to her concern that her boy friend might learn that she had sex with the defendant. The testimony that counsel hoped to elicit would have supported the inference that the complainant was motivated to lie to prevent her parents from learning that she was sexually

---

[4]In a memorandum in support of his motion for postconviction relief, defense counsel stated what he intended to present as his offer of proof during the cross-examination of the defendant, had he been allowed by the judge to state his position for the record. Counsel's offer would have been as follows:

"The proposed questioning would have made clear the complainant's powerful fear that withdrawing her accusation would subject her to consequences that were intolerable to her, namely, damage to her relationship with her parents, especially her father. The examination would have shown that her parents sternly disapproved of pre-marital sex, and the strength of her fear about any revelation to her parents of her consensual sexual activity. . . . Had the proper cross-examination been permitted . . . the court would have heard evidence and found that [the complainant's] fear of disclosure concerning her sex life was so great that her sexual relationship with [her boy friend] remained unknown to her parents [for over a year]. [The complainant's] efforts to conceal this sexual relationship with [her boy friend] provides strong corroboration for her motivation to falsify her accusation against the defendant."

active. This would have amounted to a separate and discrete basis of impeachment of the complainant's credibility.

Testimony to this effect also would have had the additional persuasive effect of explaining some of the complainant's rather curious behavior after the alleged rape occurred. For example, fear of parental reaction would tend to explain why the complainant swore her classmate and childhood friend (who presumably knew the complainant's parents) to silence after reporting to the classmate that she had been raped. The same fear also would tend to explain why the complainant waited nine months to report the incident to her parents, and did not do so until her hand was forced by the anonymous caller who spoke with her father. Thus, relying on the admitted testimony about the relationship with her boy friend, and the excluded testimony about the views of the complainant's parents on premarital sex, defense counsel could have argued that the complainant lied initially to preserve her relationship with her boy friend, and continued to lie later (after she and her boy friend had broken up) to preserve her relationship with her parents. Because of the judge's ruling, however, counsel was unable to make this argument.

The Commonwealth makes several interrelated arguments in support of the judge's ruling which should be discussed in some detail. First, the Commonwealth argues that the judge did not entirely cut off the line of questioning that counsel desired to pursue, and that counsel therefore must bear the responsibility for the fact that he did not present the evidence of motive to lie due to parental concern that he wanted to present. In support of this argument, the Commonwealth refers to cases in which there was no error in the restriction of aspects of cross-examination where counsel asked questions in improper form, or made no offer of proof, or did not attempt to work around apparently narrow restrictions on cross-examination. See *Commonwealth* v. *Barnes*, 399 Mass. 385 (1987); *Commonwealth* v. *Doherty*, 394 Mass. 341 (1985); *Commonwealth* v. *Cheek*, 374 Mass. 613 (1978); *Commonwealth* v. *DeBrosky*, 363 Mass. 718 (1973); *Commonwealth* v. *Bucknam*, 20 Mass. App. Ct. 121 (1985).

These cases are inapposite. Here, after a question that clearly presaged the direction in which counsel was headed, the judge unequivocally terminated the line of questioning. Defense counsel repeatedly attempted to make an offer of proof and to explain himself, but the judge peremptorily foreclosed counsel's efforts to make a record. In these circumstances, we will not fault counsel for not attempting to return to this topic by another route. As we read the transcript section quoted above (see note 3, *supra*), counsel could reasonably have concluded that this entire area was off limits, and that further attempts to pursue the inquiry would be viewed as contemptuous.

Second, the Commonwealth contends that the defendant waived the chance to examine the complainant on this point because counsel did not mention the specific topic of parental disapproval in his motion in limine or during the bench conference, and because he did not try to explore the topic by simply asking different questions after the objection was sustained. This argument is unpersuasive. The questions that counsel wanted to ask the complainant flowed from the premise that she had a sexual relationship with her boy friend. The judge had authorized counsel to ask about this. The complainant testified that there was such a relationship. After that, counsel only wanted to follow up by asking about her parents' knowledge of this relationship and her parents' feelings about premarital sex. This inquiry related to the complainant's motive to falsify, a concept that the defendant did refer to in his pretrial motion in limine. Moreover, assuming that it was necessary for counsel to review such questions with the judge in advance, counsel was ready, willing, and able to do so, but the judge cut him off. As to counsel's decision not to pursue the topic further after the judge's ruling, we indicated above that this was appropriate in the circumstances.

Third, the Commonwealth asserts that, even if the judge had allowed the offer of proof, he might well have prohibited the line of questions on relevance grounds. The judge did not indicate that relevance was of concern to him, so we can only

speculate as to how he would have ruled on this point. As we said above, however, the evidence was relevant and could have been helpful to the defendant's case. We will not assume that the judge would have drawn a contrary conclusion.

Fourth, the Commonwealth argues that the inquiry counsel desired to conduct was barred by the rape-shield statute. The short answer to this assertion is that the only question that implicated rape-shield policies in the line of inquiry that defense counsel desired to pursue was the question that the judge had authorized relating to the complainant's sexual relationship with her boy friend. As to that question, counsel followed prescribed procedures by discussing it in advance with the judge. The other questions (which counsel was prevented from asking) related to the relevant subjects of the complainant's bias and motive to lie, and were not improper under the rape-shield statute.

Fifth, the Commonwealth argues that any abuse of discretion by the judge was nonprejudicial because counsel's cross-examination of the complainant in general was effective and revealed inconsistencies to which any excluded evidence would have added little. As we noted above, however, the inquiry that counsel desired to make could have uncovered evidence of a discrete cause of bias and reason to fabricate. This evidence would not have been cumulative of other evidence that was admitted, contrast *Commonwealth* v. *Elder*, 389 Mass. 743, 749-751 (1983) (no error in limitation of cross-examination because defendant was able to establish bias without disputed evidence); *Commonwealth* v. *Heath*, 24 Mass. App. Ct. 437, 444-445 (1987) (same); *Commonwealth* v. *McNickles*, 22 Mass. App. Ct. 114, 117-119 (1986) (same), and the fact that the complainant's credibility was impeached for other reasons does not render the restriction on the cross-examination harmless.

Sixth, and finally, the Commonwealth asserts that, had the judge viewed the evidence that counsel hoped to elicit as in any way helpful, he would have allowed it to come in. The judge articulated no basis for his decision beyond the fact that counsel did not bring his intentions regarding this par-

ticular aspect of his cross-examination to the judge's attention sooner. We therefore will not speculate as to whether the judge refused to allow that part of the cross-examination because he considered the information it might reveal unhelpful. If that were the case, the judge should have so indicated for the record.

In sum, the judge prevented counsel from pursuing on cross-examination a line of inquiry that was not violative of rape-shield strictures and that could have established that the complainant was biased and had a specific reason to lie about what had happened between her and the defendant. This reason to lie, if proved, would have been unrelated to other possible reasons that the complainant may have had to dissemble, and it was not provable through other evidence admitted at trial. Therefore, and in view of the conflicting nature of the evidence of the defendant's guilt, we cannot say that the introduction of this evidence would not have had a material effect on the outcome of the trial. See *Commonwealth* v. *Grieco*, 386 Mass. 484, 491 (1982); *Commonwealth* v. *Caldron*, 383 Mass. 86, 92-93 (1981). A new trial is necessary.

3. *Examination by counsel of the complainant's treatment records.*[5] After the trial, defense counsel learned for the first time (as did the prosecutor) of the complainant's treatment at the New York Hospital. The defendant promptly moved for postconviction relief in part on the ground that the complainant had failed to provide the court with a full and accurate account of the sources of her treatment records. The judge ordered that the records of the New York Hospital treatment be produced. The defendant then moved for "appropriate relief" concerning the New York Hospital records. In this motion, the defendant argued that an in camera inspection of the records by the judge might not adequately protect his right to a fair trial, and he requested that the

---

[5] We gratefully acknowledge the brief of the Massachusetts Association of Criminal Defense Lawyers, as amicus curiae, that was submitted in connection with this issue.

records be made available to the Commonwealth and the defendant for inspection. After a hearing and review of the records in camera, the judge denied both motions.

Citing his rights under the Massachusetts Declaration of Rights to confrontation, compulsory process, and a fair trial, the defendant argues that his counsel should be permitted to examine the records of the complainant's treatment at the New York Hospital and with the Greenwich, Connecticut, social worker. The Commonwealth contends in response that the desired records are privileged[6] and that the defendant's rights were adequately protected by the judge's in camera review of the records. We discuss this issue now for purposes of the retrial.

The United States Supreme Court has held that, where a criminal defendant desires access to privileged records of the confidential communications of the complaining witness, the interests of the defendant and the State in a fair trial are fully protected by an in camera review of those records by the trial judge. See *Pennsylvania* v. *Ritchie*, 480 U.S. 39, 59-61 (1987). This holding does not necessarily answer the question before us, however, because, in the past, "on similar facts, we have reached different results under the State Constitution from those that were reached by the Supreme Court of the United States under the Federal Constitution." *Commonwealth* v. *Upton*, 394 Mass. 363, 372 (1985), and cases cited. Thus, in *Commonwealth* v. *Clancy*, 402 Mass. 664 (1988), we rejected the defendant's argument — predicated solely on Federal constitutional principles — that he was entitled to examine the medical records of the chief prosecution witness. At the same time, we reserved the question whether the result would be the same under the Massachusetts Declaration of Rights. See *id.* at 670. See also *Commonwealth* v. *Jones*, 404 Mass. 339, 340-344 (1989) (rejecting argument that Federal Constitution requires more than in camera re-

---

[6]See G. L. c. 233, § 20B (psychotherapist/patient); G. L. c. 112, § 135 (social worker/client).

view of requested DSS records, and expressly declining to address unraised State law question).

The Federal standard requiring only an in camera review by the trial judge of privileged records requested by the defendant rests on the assumptions that trial judges can temporarily and effectively assume the role of advocate when examining such records; and that the interests of the State and complainant in the confidentiality of the records cannot adequately be protected in any other way. Neither assumption withstands close scrutiny.

As to the first assumption, the United States Supreme Court has said that " 'it [is] extremely difficult for even the most able and experienced trial judge under the pressures of conducting a trial to pick out all of the [information] that would be useful in impeaching a witness.' . . . Nor is it realistic to assume that the trial court's judgment as to the utility of material for impeachment . . . would exhaust the possibilities. In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate." (Citation omitted.) *Dennis* v. *United States*, 384 U.S. 855, 874-875 (1966). We have expressed a similar concern: "The danger lurking in the practice of . . . in camera review [of privileged documents] by the trial judge is a confusion between the roles of trial judge and defense counsel. The judge is not necessarily in the best position to know what is necessary to the defense." *Commonwealth* v. *Clancy, supra* at 670. See *Commonwealth* v. *Liebman*, 388 Mass. 483, 489 (1983) ("[W]hen a judge undertakes to decide if [evidence] benefits the defendant's case he is 'assuming vicariously and uncomfortably the role of counsel' ").

Regarding the second assumption, we are not convinced that the interests of the State and the complaining witness in preserving the confidentiality of communications to psychotherapists and social workers can *only* be protected by an in camera review procedure. Trial judges have broad discretion to control the proceedings before them. There is no reason why they cannot take steps to insure that breaches of confi-

dentiality attending discovery are limited only to those absolutely and unavoidably necessary to the preparation and presentation of the defendant's defense. For example, judges could allow counsel access to privileged records only in their capacity as officers of the court. Admission of or reference to any such information at trial could be conditioned on a determination (made after an in camera hearing) that the information counsel seeks to use is not available from any other source. Cf. *Commonwealth* v. *Two Juveniles*, 397 Mass. 261, 269 (1986); *Commonwealth* v. *Jones*, *supra* at 345 (Lynch, J. dissenting). Protective orders (enforced by the threat of sanctions) requiring counsel and other necessary participants in the trial not to disclose such information could be entered. See *Commonwealth* v. *Amral*, 407 Mass. 511, 526-527 (1090) (Liacos, C.J., dissenting). Although these procedures would result in counsel for the defendant and the Commonwealth, rather than just the judge, viewing privileged records, if careful precautions in the order of those described above are taken, such breaches of confidentiality need not be any more intrusive or harmful than those attending in camera review of records by the judge alone.

In addition to rejecting the assumptions that support the Federal standard, we note that § 20B of G. L. c. 233, and § 135 of G. L. c. 112, are not statements of absolute privilege, unlike certain other statutory testimonial privileges such as G. L. c. 233, § 20A (priest/penitent), and G. L. c. 233, § 20J (sexual assault counselor/victim). See *Commonwealth* v. *Jones*, *supra* at 343. Both sections contain exceptions limiting their scope. As such, the privileges at issue here derive from a "less firmly based legislative concern . . . for the inviolability of the communication being protected." *Commonwealth* v. *Two Juveniles*, *supra* at 266.

Balanced against these qualified privileges are important State constitutional rights of the defendant. Because we have said that, in appropriate circumstances, even absolute statutory privileges (nonconstitutionally based) must yield to a defendant's constitutional right to use privileged communications in his defense, see *id.*, we are not persuaded that

allowing counsel access to the treatment records at issue in this case would do great violence to the less firmly based policies represented by §§ 20B and 135. In these circumstances, those policies must give way to the defendant's need to examine the complainant's treatment records.[7]

Accordingly, we conclude that, under art. 12 of the Massachusetts Declaration of Rights, counsel for the defendant is entitled to review the records of the complainant's treatment at the New York Hospital and with the Greenwich, Connecticut, social worker to search for evidence of bias, prejudice, or motive to lie. On remand, the judge shall determine the circumstances under which counsel for the defendant and the Commonwealth shall review the records. The judge then shall conduct an in camera hearing concerning the admissibility of any information in the records that counsel may wish to use at trial. In his discretion, the judge also shall enter any orders that are deemed appropriate to ensure that the information contained in the records will not be disclosed beyond the defendant's need to prepare and present his defense.

One additional point bears mention. Because victims of sexual crimes are likely to suffer a "depth and range of emotional and psychological disturbance . . . not felt by the victims of most other crimes," *Matter of Pittsburgh Action Against Rape*, 494 Pa. 15, 42 (1981) (Larsen, J., dissenting), the public interest lies in assisting victims of sexual crimes to recover from injuries. *Id.* at 24. The policy of the Commonwealth is in accord. See G. L. c. 233, § 20J (1988 ed). Cf. *Commonwealth* v. *Jones*, 404 Mass. 339, 342-343 (1989). We therefore remind lawyers and judges that the mere fact

---

[7]The Commonwealth points out that a majority of the States that have considered this question have concluded that an in camera inspection of disputed records by the judge adequately protects the defendant's rights. See, e.g., *In re Robert H.*, 199 Conn. 693 (1986); *People* v. *Barkauskas*, 497 N.E.2d 1183 (Ill. Ct. App. 1986); *State* v. *Perry*, 552 A.2d 545 (Me. 1989); *State* v. *Paradee*, 403 N.W.2d 640 (Minn. 1987). However, this is not a universal view, contrast *Commonwealth* v. *Lloyd*, 523 Pa. 427 (1989), and we decline to adopt it.

that such a victim sought counseling may not be used for impeachment purposes.

The judgments are reversed, and the verdicts set aside. The case is remanded for a new trial.

*So ordered.*