COMMONWEALTH *vs.* ERIC BAXTER.

No. 92-P-1002.

Norfolk. June 14, 1993. - February 8, 1994.

Present: PERRETTA, JACOBS, & PORADA, JJ.

*Rape. Rape-Shield Statute. Evidence,* Impeachment of credibility, Relevancy and materiality, Communication between patient and psychotherapist, Privileged communication. *Witness,* Credibility, Privilege, Psychiatric examination. *Privileged Communication.*

At the trial of a rape indictment in which the defense was consent, the judge incorrectly excluded, on relevancy grounds, evidence offered by the defendant pursuant to the procedures set forth in G. L. c. 233, § 21B, attempting to establish through expert testimony that because of a prior rape the complainant was experiencing psychiatric problems that left her unable to distinguish between the prior incident and the incident for which the defendant was being tried. [50-52]

At the trial of an indictment for rape, the rape-shield statute, G. L. c. 233, § 21B, did not operate to exclude evidence of the prior rape of the complainant where that evidence was offered not to attack the complainant's credibility but rather, with expert psychiatric testimony, to support the defense of consent. [51-52]

At the retrial of an indictment for rape, the trial judge, guided by the cases decided under G. L. c. 238, § 20B, was to determine whether certain information in the complainant's psychiatric records should be admissible on the issue of her motive to lie. [52-53]

INDICTMENT found and returned in the Superior Court Department on March 20, 1991.

The case was tried before *Andrew G. Meyer,* J.

*Carol A. Donovan,* Committee for Public Counsel Services, for the defendant.

*Robert C. Cosgrove,* Assistant District Attorney, for the Commonwealth.

PERRETTA, J. At his jury trial on an indictment charging him with rape, the defendant conceded to having sexual intercourse with the complainant in an upstairs bedroom of his

friend's house but claimed the complainant consented. He attempted to show that the complainant had been raped a year earlier by a man named Eric in an upstairs bedroom of a house where a group of people had gathered for a party, that as a consequence of the prior rape, the complainant experienced psychiatric problems which included flashbacks, and that her flashbacks had a significant impact on her ability to distinguish the events in question from the past act. The trial judge excluded this evidence on relevancy grounds, that is, as the complainant's allegation of a prior rape was in fact truthful, it had no relevancy on the issue of her credibility. We reverse the conviction.

1. *The facts.* It is not necessary to an understanding of the issues on appeal that we recite the evidence in detail or that we reveal the true identity of the witnesses, some of whom were still in high school on the date in question, September 22, 1990. It is sufficient to know that on the date in question, the complainant, based upon a lie about where she intended to go, obtained her mother's permission to be out that night until 10:30 P.M. At about 9:00 P.M., the complainant and two girlfriends drove to the house of a boy whom one of the girls, not the complainant, was dating.

As might be expected, there are different versions of what happened at the house. It is undisputed that upon the arrival of the complainant and her friends, the boyfriend, three of his friends, including the defendant, and the boyfriend's brother, were in the living room watching television.[1] Some of the witnesses stated that beer was being consumed. In any event, the complainant and the defendant went to an upstairs bedroom where they had sexual intercourse.

What is disputed is whether, as the complainant testified, she went upstairs because she feared that she would not be taken home unless she had intercourse with the defendant and once upstairs, the defendant ignored her protests and raped her. There are minor variations in the testimony of two

---

[1]The boyfriend's mother was out and not due home until later.

others who were at the party,[2] but they essentially agreed with the defendant's testimony that the complainant was a willing participant.[3]

Also not in dispute are the facts that after the complainant and the defendant returned to the living room from the bedroom, the group went out for something to eat and then dropped the complainant and her girlfriend off two doors down from the complainant's house. The girlfriend was staying overnight with the complainant. The girls went into the house, said goodnight to the complainant's mother, and went to bed. Later that night, they were awakened by the boyfriend and his friends who were demanding to speak with the complainant's girlfriend. Because of the hour, the complainant's mother refused. She had to call the police several times between midnight and 3:00 A.M., before the group would leave. The defendant had gone his own way earlier and was not a part of this incident. This commotion caused the complainant to become quite upset; the girlfriend described her as hysterical, screaming and crying.

When the mother returned from taking the girlfriend home the next morning, she found the complainant curled in a ball and crying. The complainant had called her brother's friend and told him that she had been raped. When she told her mother of the rape, the mother called the police, and they took the complainant to the hospital where she was examined.[4]

2. *The prior rape.* Pursuant to motions which complied with *Commonwealth* v. *Stockhammer*, 409 Mass. 867, 880-

---

[2]Not everyone at the party testified. The complainant's girlfriend, the boyfriend-host, and the defendant all testified on his behalf.

[3]The complainant's girlfriend and the boyfriend followed the complainant and the defendant into the bedroom, saw the complainant, naked below the waist, and the defendant on the bed kissing, and then returned to the living room. While in the bedroom, they neither heard the complainant protest nor saw her struggle.

[4]The hospital records indicate that no bruises, cuts, abrasions, or scrapes were observed on the complainant.

885 (1991),[5] the defendant was given access to the complainant's psychiatric records. To obtain permission to use that information as evidence in his defense, he followed the procedures required by G. L. c. 233, § 21B, as inserted by St. 1977, c. 110, which provides in relevant part: ". . . [S]uch evidence shall be admissible only after an in camera hearing on a written motion for admission of same and an offer of proof."

As related in the defendant's detailed offer of proof and supporting memorandum of law, the defendant sought to show that the complainant had reported that she had been sexually assaulted on September 4, 1989, at a party where beer and drugs were available, that her assailant's name was Eric, and that the assault had taken place in an upstairs bedroom of a duplex house.[6] Subsequent to that incident, the complainant was hospitalized for psychiatric care four times before the 1990 event now in question. Her hospital records indicate that she suffered from, among other problems, "suicidal ideation," "flashbacks" to the assault, "auditory hallucinations," "difficulties with her mother over relationships with boyfriends," concerns that her mother believed her to be promiscuous, and a "negative view of men."[7]

Also set out in the offer of proof was the fact that the defendant had retained a psychiatric expert witness with funds allowed by the court. This potential witness had advised the defendant that the complainant's "history impacts on her ability to perceive, recollect, and recall the events in question" and that the "flashbacks" were significant in respect to

---

[5]Notwithstanding the fact that the motions were brought and the case tried almost two years before the release of *Commonwealth* v. *Bishop*, 416 Mass. 169, 181-183 (1993), the standards therein discussed were met.

[6]It appears from the police report concerning this prior incident that the nature of the assault was rape or attempted rape. According to the report, the complainant had never had intercourse and was uncertain whether she had been penetrated sufficiently to change the incident from assault to rape.

[7]The complainant's psychiatric history predates the prior assault by some ten years. The defendant's motion, however, sought to use only the postassault hospitalizations.

her "ability to distinguish the events in question with the past event."

In ruling on the defendant's motion the morning of trial, the judge, after balancing the defendant's confrontation rights with the protections afforded the complainant by the psychotherapist-patient privilege and the rape-shield statute, see G. L. c. 233, § 20B and § 21B, concluded that the defendant could use the evidence to the extent necessary "to delve into subjects which pertain to the . . . [complainant's] ability to perceive, to recall and to relate and the . . . [complainant's] rational or irrational state of mind." He also concluded that the defendant was entitled "to get into past incidents where the . . . [complainant] has been out of touch with reality either through hallucinations or by hearing voices." The defendant, however, could not use any of the details or circumstances of the prior assault. Defense counsel objected to the limitation on the basis that it was the details and circumstances of the prior assault which made that incident relevant to the complainant's flashbacks and, ultimately, the question of her consent in the present instant. The judge remained firm on this limitation.

With this ruling in place, the only mention made of the psychiatric evidence in opening statements was by the prosecutor. He told the jury that they would hear that the complainant "has seen a psychiatrist for a number of years," and that her treating psychiatrist would testify that "there is nothing about her psychiatric history that affects her ability to perceive events or to tell the truth." On direct examination, the complainant related that she had been treated for depression for over ten years, that prior to September 22, she had been hospitalized in January, 1990, because she was depressed and suicidal, that she had never lost touch with reality and that although she had vivid memories of past experiences, she had never said that her memories seemed like flashbacks.[8]

---

[8]The complainant's denial of experiencing flashbacks was later contradicted by her girlfriend who testified that the complainant had told her she had flashbacks.

This was the information heard by the jury up to the time defense counsel began the crux of his cross-examination of the complainant. It was also the point at which the judge drastically amended his earlier ruling which allowed mention of the prior assault without any of the details and circumstances. He now ruled that "there will be no allegation of an earlier rape because there is nothing in the record that indicates that there wasn't an earlier rape." The defendant objected, arguing that he was not attacking the complainant's credibility on the basis of a false accusation of rape. Rather, it was his theory of defense that the complainant had been raped previously, and because of that prior rape, she was experiencing psychiatric problems that left her unable to distinguish between the two incidents.

It is clear from the transcript that the judge's initial and amended rulings were based upon the rape-shield statute and relevance. The judge balanced the complainant's psychotherapist-patient privilege in favor of the defendant's right to confrontation, and his ruling in respect to that privilege did not change; the defendant's expert witness would be allowed to testify, on the basis of the psychiatric records but without reference to the prior rape, as to the complainant's ability to perceive, to recollect, and whether she "has been out of touch with reality either through hallucinating or by hearing voices." Defense counsel stated that, in light of this ruling, he would not call his expert witness whose testimony would no longer be "informative," that to pursue the matter of the complainant's history without being able to mention the prior rape would make it appear that the defendant was simply trying to "smear" her.[9]

---

[9]Also because of this ruling, defense counsel could not ask the complainant's girlfriend whether the flashbacks about which the complainant had told her, see note 8, *supra,* related to a prior rape. The Commonwealth argues that the defendant cannot complain about the amended ruling because he failed to make an offer of proof concerning the girlfriend's testimony and elected not to call his expert witness. This argument is not persuasive. In his memorandum in support of his offer of proof under G. L. c. 233, § 21B, defense counsel represented that the complainant had told her girlfriend that the "incident gave her . . . flashbacks of a prior . . .

In amending his ruling to exclude all evidence of the prior assault, the judge specifically stated that "prior rapes are germane only if there has been an accusation of rape which has been proved to be false," see *Commonwealth* v. *Bohannon*, 376 Mass. 90, 95 (1978), and that it would be a "great injustice" to a person who had been raped to allow evidence of that rape to be used to impeach credibility.

Exclusion of this evidence under the rape-shield statute was not required. "The rape-shield statute is principally designed to prevent defense counsel from eliciting evidence of the victim's *promiscuity* as part of a general credibility attack" (emphasis supplied). *Commonwealth* v. *Fitzgerald*, 412 Mass. 516, 523 (1992). See also *Commonwealth* v. *Joyce*, 382 Mass. 222, 227-228 (1981); *Commonwealth* v. *Grieco*, 386 Mass. 484, 487-488 (1982). The defendant was not attempting to use the evidence of the prior rape for any purpose forbidden by the statute. To the contrary, he was seeking to show that the complainant had been victimized, that she was suffering from psychiatric problems as a result of that assault, and that because of those problems *and* the many remarkable similarities of that trauma to the present incident, she was unable to distinguish between the two situations.[10]

Each of the judge's rulings, exclusion of the evidence of the prior rape as well as exclusion of evidence of the circumstances of that previous incident, prevented the jury from

sexual assault." Moreover, the failure to call the expert was a reasoned tactical decision prompted entirely by the judge's amended ruling.

[10]The Commonwealth makes no real argument that the evidence was properly excluded under G. L. c. 233, § 20B and § 21B, or because its probative value was not sufficient to outweigh its prejudicial effect to the complainant. Rather, the Commonwealth claims that the judge's statutory and relevancy concerns were correct in light of the inadequacy of the defendant's offer of proof which was subject to contradiction by the Commonwealth's experts. We find no support in the record for this assertion. In addition to the information set out in the offer of proof and supporting memorandum, defense counsel repeated his theory of defense at the time of each of the judge's rulings. Any misunderstanding of the intended use of the evidence cannot be attributed to defense counsel. Moreover, expected contradiction of the defendant's evidence by the Commonwealth's experts would be a matter for the jury.

evaluating evidence that went to the heart of the defense, the complainant's consent to the intercourse and her subsequent confusion caused by her psychiatric ailments due to the prior rape. Our examination of the record leads us to conclude that exclusion of the evidence requires reversal of the defendant's conviction. " 'The essential question is whether the error had, or might have had, an effect on the jury and whether the error contributed to or might have contributed to the verdict[].' *Commonwealth* v. *Perrot*, 407 Mass. 539, 549 (1990). The rulings in this case meet this test." *Commonwealth* v. *Fitzgerald*, 412 Mass. at 524-525.

Even assuming that the excluded evidence was within the realm of concern of the rape-shield statute, our conclusion, that the rulings were erroneous, would not change. "When evidence concerning a critical issue is excluded and when that evidence might have had a significant impact on the result of the trial, the right to present a full defense has been denied." *Commonwealth* v. *Fayerweather*, 406 Mass. 78, 84 (1989), quoting from *Commonwealth* v. *Bohannon*, 376 Mass. at 94, and citing *Commonwealth* v. *Two Juveniles*, 397 Mass. 261, 267-268 (1988); *Commonwealth* v. *Clancy*, 402 Mass. 664, 669 (1988). See also *Commonwealth* v. *Ruffen*, 399 Mass. 811, 814-816 (1987); *Commonwealth* v. *Stockhammer*, 409 Mass. at 875-877, 879; *Commonwealth* v. *Cardoza*, 29 Mass. App. Ct. 645, 648-649 (1990); *Commonwealth* v. *Thevenin*, 33 Mass. App. Ct. 588, 593-594 (1992).

3. *Other claims.* As an alternative theory of defense, which became primary after the above-discussed rulings, the defendant sought to use information in the complainant's psychiatric records to show that in March, 1990, the complainant's mother found out about the complainant's clandestine meetings with a boyfriend, and that an argument between her and her mother ensued which resulted in her hospitalization and the mother's imposition of strict rules of conduct on the complainant. It was the defendant's position that this episode, viewed in light of the complainant's violation of her mother's rules on the night in question, the midnight appear-

ance and commotion at the complainant's house by some of the young men who had been at the gathering, and the mother's consequent anger, provided the complainant with a motive to lie about what had happened. The judge excluded this evidence on relevancy grounds, and the defendant claims error.[11]

In view of our conclusion that the defendant is entitled to use the evidence of the prior rape and its circumstances at retrial, we think that a decision concerning use of any additional information in the psychiatric reports concerning the complainant's motive to lie is best left, in the first instance, to the discretion of the trial judge, who should be guided by cases such as *Commonwealth* v. *Stockhammer*, 409 Mass. at 876-877; *Commonwealth* v. *Fitzgerald*, 412 Mass. at 525; *Commonwealth* v. *Kowalski*, 33 Mass. App. Ct. 49, 52 (1992), and who "should weigh carefully the defendant's confrontation rights against the statutory psychotherapist-patient privilege." *Commonwealth* v. *Fayerweather*, 406 Mass. at 84.

4. *The prosecutor's closing argument.* Even if at retrial there is evidence of actions and statements by the defendant which bespeak a consciousness of guilt, statements such as the defendant's "pattern of lying" gave "insight into his character" should not be repeated. See *Commonwealth* v. *Hightower*, 400 Mass. 267, 270-271 (1987).

The judgment is reversed, and the verdict is set aside. The case is remanded for a new trial.

*So ordered.*

---

[11]The judge deemed the evidence irrelevant because at the time the complainant told her mother that she had been raped, the mother was unaware of where her daughter had been the night before and, therefore, the complainant would not have had a motive to lie. However, subsequent to this ruling, the complainant's girlfriend testified that when her boyfriend appeared at the complainant's house with his friends and caused a commotion requiring the police, she told the mother where she and the complainant had been earlier.